FEINSOT et al. v. BURSTEIN.

(Supreme Court, Appellate Division, First Department. April 3, 1914.)

DAMAGES (§ 81*)—LIQUIDATED DAMAGES AND PENALTIES—LEASE.

Where, under a lease of a tenement house, the lessees deposited $2,000 as security, the lease providing that in case of any breach the deposit should be retained "as liquidated damages," or, if the lessees were dispossessed by summary proceedings as provided therein, the landlord could retain it "as liquidated damages and not a penalty," and the lessees were afterwards dispossessed for nonpayment of $325, a part of a month's rent, the deposit was a penalty, its purpose being to secure the performance of the covenants, and not liquidated damages, regardless of its designation as such by the parties, since, the damages being easily ascertainable and the deposit being so disproportionate to the actual damages, the parties must have intended it as a penalty; hence the landlord could not retain the deposit but could only recover his actual damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 177; Dec. Dig. § 81.*]

Ingraham, P. J., and Scott, J., dissenting.

Appeal from Appellate Term, First Department.

Action by Morris Feinsot and another against Maurice J. Burstein. From a judgment of the Appellate Term (82 Misc. Rep. 429, 143 N. Y. Supp. 1040) reversing the judgment of the trial court dismissing the complaint, defendant appeals. Affirmed.

See, also, 144 N. Y. Supp. 1115.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Charles Bernstein (Gerald B. Rosenheim, of New York City, of counsel, and Louis J. Vorhaus, of New York City, on the brief), for appellant.

Herman B. Goodstein, of New York City, for respondents.

CLARKE, J. The action was to recover a deposit of $2,000 made by the plaintiffs upon a lease, less the amount due when they were dispossessed. The lease was for a tenement house on Orchard street for a term of four years, commencing on February 1, 1911, at a yearly rental of $12,000, payable in monthly installments of $1,000 each, to be paid $500 on the 5th and $500 on the 10th of each month in advance. The lease provided that:

"In case any rent shall be due and unpaid, or if default shall be made in any of the covenants herein contained, then it shall be lawful for the party

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the first part to re-enter the said premises or in her option to commence summary proceedings to recover possession, * * * and in the event of such re-entry, or the commencement of such summary proceedings, this lease shall be at an end."

The parties of the second part covenanted to make all inside and outside repairs and to keep the same in good condition except the outside structural repairs as brick walls and sidewalks, and, in the event of their failure to make said repairs, the landlord had the right to make the same and to add the costs thereof to the monthly rent due for the month subsequent to said repairs. They covenanted to comply with all orders of the fire underwriters and to comply with the orders and requirements of the tenement house and other bureaus of the city government. The lease provided as follows:

"The said parties of the second part have deposited with the party of the first part the sum of two thousand ($2,000.00) dollars, * * * as security for the faithful performance of all the covenants and conditions of this lease, on the part of the parties of the second part, and in case of any breach thereof by said parties of the second part, the said amount of money shall be held and retained by the said party of the first part as liquidated damages for said breach. And the parties further agree that in the event that the said parties of the second part shall be dispossessed on summary proceedings brought to recover possession of said premises and to remove them therefrom, that the said party of the first part shall, nevertheless, have the right to retain the said sum of $2,000 as liquidated damages, and not as a penalty."

The lease further provided for the payment by the party of the first part of interest at the rate of 3 per cent. on said $2,000 to be deducted annually from the rent to be paid; "the said party of the first part, upon the termination of this lease, at the end of the term aforesaid, shall return the said deposit of two thousand ($2,000) dollars to the parties of the second part, heirs or assigns."

The plaintiffs went into, and remained in, possession for a year. On the 13th of February, 1912, summary dispossess proceedings were instituted against them solely for the nonpayment of $325, part of the rent for the month of February, and they were removed. Plaintiffs brought this action to recover the amount of the deposit, and it was tried before the court and a jury. The defendant raised the issue that the plaintiffs had broken their covenant to make repairs; that when possession was retaken the premises were badly out of repair; and that he had spent $1,600 for repairs. The plaintiffs controverted this, testifying that the premises were in much better condition when they left than when they took possession, and submitted bills showing they had expended $1,200 in repairs. The jury resolved this question of fact in favor of the plaintiffs, and returned a verdict for them for $1,784.37, which was the amount of the deposit, $2,000, less the rent due, $325 and interest on the balance of $1,675, viz., $109.37. Thereafter the trial court dismissed the complaint. The Appellate Term unanimously reversed the judgment and reinstated the verdict.

By the verdict of the jury the breach of the covenant to repair is out of the case. There remains, therefore, only the breach of the covenant to pay rent. That is $325, a portion due for one month. Upon this breach, are the plaintiffs to be held to have forfeited the amount of their deposit? An examination of the lease discloses that the tenants

obligated themselves to but one general covenant, to wit, the payment of the rent reserved. It is true they were obliged to make all inside and outside repairs; to comply with all orders of the board of fire underwriters, all city ordinances and requirements affecting the property; to pay excess croton water charges; and to pay plate glass insurance. But the possible damages flowing from the breach of any of these requirements were not only easily ascertainable, but the lease lays down an exclusive method of ascertainment. It specifically provides that the damages after ascertainment shall be added to the rent of the ensuing month and become payable by the tenants as increased rent. The verdict establishes no breach except to pay rent.

In Chaude v. Shepard, 122 N. Y. 397, 25 N. E. 358, the court said:

"It may be observed that the primary purpose of the deposit was security for the performance by the plaintiff of his covenants in that instrument. Those covenants were to pay the rent and the charges assessed for croton water, and to make repairs during the term. The only default at the time of his removal, by means of the summary proceedings taken by the defendant, was in the nonpayment of one month's rent. * * * The damages resulting from the termination of the tenancy, by reason of the plaintiff's failure to perform the covenants, were neither indefinite nor uncertain in character. His relation of tenant could be terminated before the end of the term only by the act or consent of the defendant; and, when he accomplished it and took possession of the premises, the damages with which the plaintiff was chargeable were those only which resulted from breach of the covenants, prior to entry of the defendant, upon the termination by the latter of such tenancy. * * * In view of the intention of the parties as derived from the entire provision in respect to this deposit, there was nothing within their contemplation in its purpose, in the event of the premature termination of their relation given by the lease, other than such damages as should result from the default of the plaintiff. * * * And, as the only default of the plaintiff was in the nonpayment of one month's rent, he was entitled to recover the excess over that of the amount so deposited."

In Caesar v. Rubinson, 71 App. Div. 180, 75 N. Y. Supp. 544, the lease provided for a deposit of $1,000 "as security for the faithful performance of this agreement on their part, and, in case of any breach thereof by said tenants, said amount shall be paid and retained by said landlords as liquidated damages for said breach; but, in case the actual damages suffered by said landlords through such breach shall be greater than said sum of $1,000, then said sum shall be applied on account of such damage, and said tenants be still liable for the balance thereof." This court, although divided, held, in a forcible opinion by Mr. Justice Hatch, that the provision was for liquidated damages, and the landlord was entitled to retain the deposit. But in 174 N. Y. 492, 67 N. E. 58, the Court of Appeals unanimously reversed, saying:

"The circumstance that the deposit is described in the lease as liquidated damages for a breach of the agreement is not at all conclusive. * * * Whether it is that or a penalty depends upon the nature of the transaction and the intention of the parties. * * * A provision in a contract such as that now under consideration will be treated as liquidated damages only in those cases where, from the nature of the transaction, the actual damages consequent upon a breach of the contract are incapable of accurate measurement, or where the sum specified in the instrument is not out of all proportion to any damages which could possibly arise from a breach. * * * The only breach of the lease which the defendants assert as a ground for retaining the deposit is the omission of the tenants to pay the $45 of the monthly rent. * * * There is no inherent difficulty in measuring the legal damages which

the landlord sustained in a case where the tenant omits to pay the rent, and is for that reason dispossessed. The rule of damages in such cases is quite well settled. It is not claimed in this case that the landlord sustained any other damages beyond the loss of the rent, and that was allowed at the trial and deducted from the deposit. In the absence of anything in the record to the contrary, the presumption is that the landlord resumed the possession of the demised premises or relet them for the same or a larger rental, and, if so, it is difficult to see why he should be entitled to have the leased premises and the deposit at the same time. He was not bound to take possession, but could have exhausted the deposit by applying it upon the arrears of rent from time to time as it fell due. * * * This is therefore a case where the damages sustained by reason of the breach of the lease in the failure to pay the stipulated rent could have been easily ascertained, and, when ascertained, it is out of all proportion to the deposit retained under the claim that it was liquidated damages. * * * The entry of the landlord under the warrant issued upon the judgment in the proceedings to dispossess the tenants for failure to pay the $45 canceled the lease and annulled the relation of landlord and tenant. When the landlord elected to assert that right, he waived all claim to the deposit, except so far as it was necessary to apply it in payment of rent then due or accrued."

Feyer v. Reiss, 154 App. Div. 272, 138 N. Y. Supp. 964, is distinguishable in these important particulars:

First. The lease in that case was clear and definite as to the character of the deposit.

"It being expressly understood and agreed that, if the lessees surrender the said premises or are dispossessed therefrom prior to the expiration of this lease in 1914, then and in that event the said $800, together with any subsequent installments which shall be paid by the lessees as hereinbefore provided, shall belong to the lessor as liquidated and stipulated damages, and the parties hereto agree to stipulate such deposit as liquidated damages because they cannot ascertain the exact amount of damage which the lessor would sustain in the event of any breach or violation hereunder."

Secondly. The jury rendered a verdict against the plaintiff, thus resolving the facts adversely to the tenants, and the judgment of dismissal was upon that verdict and not against it as in the case at bar.

And, thirdly. The court there found no excessive disproportion between the deposit and the possible damages.

It seems to me that in the case at bar the authorities and the verdict of the jury settle the controversy in favor of the respondent. To use the language of the Court of Appeals in the Caesar Case, supra:

"I am unable to distinguish this case in principle from those in which this court has passed upon provisions of a similar character in leases or agreements between landlord and tenant. Chaude v. Shepard, supra; Scott v. Montells, 109 N. Y. 1 [15 N. E. 729]. In these cases it was held that the deposit was intended as security for the performance of the covenants of the lease and not as liquidated damages."

The determination of the Appellate Term should be affirmed, with costs to the respondent.

McLAUGHLIN and LAUGHLIN, JJ., concur.

INGRAHAM, P. J. (dissenting). Sarah Roth executed and delivered to the plaintiffs a lease of certain property known as Nos. 85-87 Orchard street, in the city of New York, for a term of four years, commencing on the 1st day of February, 1911, at the yearly rental of

$12,000, payable in equal monthly installments of $1,000 each in advance. The lease provided that if any rent should be due and unpaid, or if default should be made in any of the covenants contained in the lease, then it should be lawful for the landlord to re-enter on the premises and commence summary proceedings to recover possession thereof, and that in the event of such re-entry, or the commencement of such summary proceedings, the lease should be at an end. The tenants further covenanted that they would make all inside and outside repairs in and about said premises and keep the same in good condition during the continuance of the lease, except the outside structural repairs which were to be made by the landlord. The tenants further covenanted that, in the event of their failure to make such repairs, the landlord would have the right to make the same and to add the costs thereof to the monthly rent due. The parties of the second part further covenanted that they would not use or occupy said premises, or permit the same to be used or occupied for business or purposes deemed extra-hazardous on account of fire, and the tenants further agreed to comply with all orders, edicts, and specifications of the New York board of fire underwriters, and that they would not sublet any part of the premises to such tenants or business that might increase the then insurance rate; that, should such rate be increased, such increase should be borne by the tenants; that in the event that a water meter for the entire house should be placed in said premises, or should the present water meter supplying the stores show an increase of the use of the water over the previous year, then the tenants covenanted and agreed to pay annually the difference in excess between the amount of the water tax or rent, as fixed and paid for the previous year, and the amount required to be paid by reason of such waste of water in said premises. The tenant further agreed to execute and comply with all the rules, ordinances, regulations, orders, and requirements of the tenement house department and the department of health, and all other departments and bureaus of the city of New York regarding the use and repairs of said premises, and with all the ordinances, statutes, and laws in force regulating the use of said premises pertaining to the use and repairs of said premises. It was further agreed that if the landlord should enter into a contract for the sale of the premises, upon the payment to the tenants of the sum of $250 the lease should come to an end and be null and canceled upon the further payment and return by the landlord to the tenant of the $2,000 security thereinafter provided for. It was further agreed that the tenants had deposited with the landlord the sum of $2,000 "as security for the faithful performance of all the covenants and conditions of this lease, on the part of the parties of the second part, and, in case of any breach thereof by said parties of the second part, the said amount of money shall be held and retained by the said party of the first part as liquidated damages for such breach"; and the parties further agreed that in the event that the tenants should be dispossessed, on summary proceedings brought to recover possession of said premises and to remove them therefrom, the landlord should nevertheless have the right to retain the said sum of $2,000 as liquidated damages, and not as a penalty. By a separate agreement, in consideration of the sum of $1, the defendant guaranteed the performance of

the lease on the part of the landlord. The tenants remained in possession of the premises and paid the rent reserved until the 13th of February, 1912, when the tenants failed to pay a portion of the rent reserved for the month of February, and the landlord instituted summary proceedings to recover the possession of the premises, and in these proceedings he obtained a final order under which the landlord resumed possession of the premises on the 19th of February, 1912. The tenants remained in possession of the premises and paid the rent for one year, when they defaulted. Because of such default by the tenant, the landlord dispossessed the tenants and resumed possession of the premises. The tenants then commenced this action to recover from the defendant, who had guaranteed the performance of the lease by the landlord, the sum of $2,000 deposited under the terms of the lease.

The defendant set up as a defense and counterclaim that, on resuming possession of the premises, he found that the tenants had failed to comply with the covenant to make repairs; that the landlord did make such repairs at a cost of $1,600. Upon the trial the court submitted the question to the jury as to whether the property, at the time the landlord took possession, was in good condition, and if the jury found that the premises were not in good condition, less reasonable wear and tear, as they should have been, then the value of the repairs should be deducted from the balance of the deposit of security that was made at the time the lease was entered into; and the court directed the jury to deduct from the $2,000 the amount of the repairs that the landlord was required to make. The jury returned a verdict in favor of the plaintiffs for $1,784.37. The court, before submitting the case to the jury, having reserved the question whether or not it would direct a verdict for the defendant under the lease, set aside the verdict and dismissed the complaint, and from the judgment entered thereon the plaintiffs appealed to the Appellate Term, who reversed the judgment in favor of the defendant, reinstated the verdict, and directed judgment thereon, and from that determination of the Appellate Term the defendant appeals to this court.

The direct question presented is whether, under the provisions of the lease to which attention has been called, the defendant was entitled to retain the $2,000 as liquidated damages upon the failure of the tenants to comply with the terms and conditions of the lease, as a result of which the landlord instituted summary proceedings and regained possession of the property, and the lease was terminated in consequence thereof. By the lease the tenants assumed various obligations as to repairs, compliance with the ordinances of the municipal departments, and the payment of additional Croton water rates, in addition to the obligation to pay the rent. The amount of the deposit was the amount that would be payable for two months' rent of the premises, and it might well be that if, in consequence of a violation of the tenants' obligation to pay the rent reserved, it would be necessary to dispossess the tenants, the loss to the landlord by the termination of the lease at the middle of the month, or at a time when a new lessee of the premises could not be obtained, would largely exceed the amount of the deposit, and in addition the incidental loss to the landlord by reason of the failure of the tenants to make repairs or observe the

other obligations that they had assumed under the lease. Certainly the parties had a right to provide by their express agreement that a reasonable sum should be assumed to pay the damages which the landlord would sustain in consequence of a termination of the lease because of a refusal of the tenants to comply with their obligations to avoid the difficulty of proving that amount of damage which they had sustained. The difficulty in determining whether or not premises of this kind were maintained in good condition and repair by a tenant during the term of the lease is exemplified in this case. The defendant proved without contradiction that, when they took possession of the premises, they were compelled to make repairs costing over $1,600, but, because of the difficulty of proving that these repairs were made necessary by a failure of the defendant to keep the premises in good condition, the jury disallowed any claim of the defendant for making these repairs. There was also a loss of rent which seems to have been established, and for which the jury made some allowance by their verdict; and it seems to me that this illustrates the propriety and necessity in a lease of such premises of a provision for the payment of liquidated damages for a breach of the covenants of the lease. By this lease the tenants certainly expressed, as clearly as it was possible, that this deposit of $2,000 should be received and held by the landlord as liquidated damages to be retained by the defendant as full satisfaction thereof in the event that the tenants, by their failure to comply with the covenants contained in the lease, should render summary proceedings to obtain possession of the premises necessary. The lease expressly provides for the deposit of this sum of $2,000 as security for the faithful performance of all the covenants and conditions of the lease on the part of the tenant, and, in case of any breach of the agreement by the tenant, the said amount of money should be held and retained by the party of the second part; and then it further expressed the agreement between the parties that, if the tenants should be dispossessed on summary proceedings brought to recover possession of said premises and to remove them therefrom, the party of the first part shall nevertheless have the right to retain said sum of $2,000 as liquidated damages, and not as a penalty. The parties thus, by their express covenant, contemplated the possibility of this condition that subsequently developed. Under this provision the $2,000 was not to be held as security for anything, but was to be absolutely retained by the landlord if, by reason of a violation of the covenant of the lease by the tenant, the landlord should regain possession of the premises by summary proceedings for that purpose. Now this condition actually existed. The tenant failed to pay the rent reserved; summary proceedings were instituted by the landlord; and he regained possession of the premises in the middle of the month, and then was required to spend upwards of $1,600 to place the premises in repair. He failed to satisfy the jury that these repairs were made necessary by the failure of the tenant to keep the premises in good order and condition, but it seems to me that this provision was inserted in the lease for the very purpose of avoiding the necessity of the landlord having to prove that the repairs to be made were caused by the fault of the tenant in not

performing any of the obligations that they assumed. The tenants by their covenant agreed that, if they were dispossessed, the landlord should retain this sum of $2,000 as his damages for their violating the provisions of the lease which made the summary proceedings necessary. Much has been written as to when a provision for liquidated damages shall be construed as liquidated damages and not as a penalty, and the authorities are not entirely consistent; but I think that, under the rule that is established in this state, the question as to whether such a provision shall be construed as liquidated damages depends upon the intention of the parties, as expressed in the instrument itself, and from the conditions that existed. Thus, as the Court of Appeals said in Little et al. v. Banks, 85 N. Y. 258, in speaking of the embarrassment experienced where contracts contained severe and inequitable provisions in an effort to reconcile the principles of justice with the well-settled rule that every person has the right to make such a contract as he chooses, and that the courts are bound to enforce it:

"The difficulty referred to has led to the adoption of the rule that, in the construction of such a provision, the actual intention of the parties, so far as it can reasonably and fairly be ascertained from the language of the contract, and from the nature of the surrounding circumstances, is to be considered. * * * This intention cannot be entirely determined by the use of the word 'penalty,' or of the words 'liquidated damages.' Nor is the word 'forfeit' conclusive * * * as to such intention. It must be arrived at in view of the circumstances of each particular case."

This rule has been adhered to in the subsequent cases that have discussed the question.

In Caesar v. Rubinson, 174 N. Y. 492, 67 N. E. 58, it is again stated that:

"The circumstances that the deposit is described in the lease as liquidated damages for a breach of the agreement is not at all conclusive. The character of the deposit, whether liquidated damages or a penalty, depends upon the intention of the parties, as disclosed by the situation and by the terms of the instrument. The deposit is not necessarily to be regarded as liquidated damages, although it is expressly so stated in the instrument. Whether it is that or a penalty depends upon the nature of the transaction and the intention of the parties. This has been frequently held in the case of an ordinary lease, and where the amount was largely out of proportion to the damages suffered by the breach of the lease. * * * Where the language of such a provision specifying the amount of damages to be paid in case of a breach of the contract is clear and explicit to that effect, the amount is to be deemed liquidated damages, when the actual damages contemplated at the time the agreement was made are in their nature uncertain and unascertainable with exactness and may be dependent upon extrinsic considerations and circumstances, and the amount is not on the face of the contract out of all proportion to the probable loss."

In the case of Mosler Safe Co. v. Maiden Lane S. D. Co., 199 N. Y. 479, 93 N. E. 81, 37 L. R. A. (N. S.) 363, the question arose under a building contract by which the plaintiff, the contractor, agreed to pay the sum of $25 per day to the owner "as liquidated damages for each day's delay in the completion of said work." The question was whether or not the owner was entitled to offset this sum of $25 per day for each day's delay in completing the contract. The question submitted to the jury was whether the delay was the fault of the contractor or

the owner, and the jury found that it was not the fault of the contractor. In discussing the question of liquidated damages for a penalty, the court said:

"Parties to contracts have the right to insert any stipulation that may be agreed to, provided that they be neither unconscionable nor contrary to public policy. No rule of law forbids them from agreeing between themselves with respect to the anticipatory damages, which shall be occasioned by the failure to complete the contract within the time specified. When they have done so, their declaration, in the event anticipated, that the sum fixed is a liquidation of the damages, or a penalty, is not conclusive, and its interpretation is for the court, having regard to the nature of the contract and the circumstances. It may be observed, generally, that whenever the damages flowing from the breach of a contract can be easily established, or the damages fixed are plainly disproportionate to the injury, the stipulated sum will be treated as a penalty. Where, however, the damages resulting from the breach would be uncertain or difficult, if not incapable of ascertainment, then the agreement of the parties liquidating them, in anticipation, will be enforced"—

citing with approval what was said in Ward v. Hudson River Building Co., 125 N. Y. 230, 26 N. E. 256, that:

"Where parties have stipulated for a payment in liquidation of damages, which are in their nature uncertain and unascertainable with exactness, and and may be dependent upon extrinsic considerations and circumstances, and the amount is not, on the face of the contract, out of all proportion to the probable loss, it will be treated as liquidated damages."

A late decision of the Supreme Court of the United States (United States v. Bethlehem Steel Co., 205 U. S. 105, 27 Sup. Ct. 450, 50 L. Ed. 731) contains the statement that the courts have become more tolerant of such provisions, and have now become strongly inclined to allow parties to make their own contracts, and to carry out their intentions, even when it would result in the recovery of an amount stated as liquidated damages, upon proof of the violation of the contract, and without proof of the damages actually sustained; the court saying:

"The question always is: What did the parties intend by the language used? When such intention is ascertained, it is ordinarily the duty of the court to carry it out."

In the case of Peabody v. Richard Realty Co., 69 Misc. Rep. 582, 125 N. Y. Supp. 349, Mr. Justice Marcus, in a careful opinion reviewing many of the authorities, said:

"The condition herein is not for payment of money. There is no condition in the bond to pay the rentals. The condition is to pay liquidated damages in case of dispossession or breach of any covenant that would justify dispossession. It cannot, therefore, be said that damages are easily ascertainable on a money basis of monthly rentals, because the effect of measuring damages on a basis of rentals would not carry out the intention of the bond."

And in that case it was held that it was the intent of the parties that the sum named should be paid as liquidated damages and not as a penalty. This case appears to have been affirmed by the Appellate Division (145 App. Div. 903, 129 N. Y. Supp. 1139) and by the Court of Appeals (207 N. Y. 642, 100 N. E. 1131).

The last case to which our attention has been called is the case of Feyer v. Reiss, 154 App. Div. 272, 138 N. Y. Supp. 964. There the Presiding Justice in the Second Department discusses the authorities

which are cited here in construing a covenant not unlike the one in this case, except it did not contain the express provision that, in the event the tenants were dispossessed the exact amount of this deposit should be retained by the landlord as the damages occasioned by the act of the tenant in making the dispossession imperative. I cannot do better than to quote what he said:

"The 'situation' disclosed that the premises consisted of eight brick tenement houses, seven houses eight families each and one four families; that the lease was for three years at an annual rental of nearly $8,000; that the lease required the lessees to make all repairs inside and out and to surrender the premises in good condition, save ordinary wear and tear; and that the amount of the deposit was equal to two months' rent. Thus the lessor was assured of a rental for his tenement property for three years, freed from the care of renting the premises, which housed 60 different tenants, and relieved from the expense of keeping the premises in repair. The rent was not payable in advance, but in semimonthly installments. For aught that appears, there was the possibility that the premises might be cast upon the lessor's hands at any time out of repair and without the assurance that they would be then remunerative by actual tenancies. 'The terms of the instrument' disclose that the intention of the parties was that this deposit was for liquidated damages. We have not only the formal expression 'liquidated damages,' but the affirmative provision in amplification and explanation that the parties have agreed that the deposit is liquidated damages 'because they cannot ascertain the exact amount of damage which the lessor would sustain in the event of any breach or violation hereunder.' I find no excessive disproportion between the deposit and the possible damages, 'apparent on the face of the contract,' to quote the language of White, J., in Sun Printing & Publishing Association v. Moore, 183 U. S. 642 [22 Sup. Ct. 240, 46 L. Ed. 366]."

It seems to me that the result of these authorities justified the trial court in dismissing the complaint. Here the parties agreed that this sum of $2,000 would be held and retained by the party of the first part as liquidated damages for said breach; and then it was further agreed:

"In the event that the said parties of the second part shall be dispossessed, on summary proceedings brought to recover possession of said premises and to remove them therefrom, that the said party of the first part shall nevertheless have the right to retain the said sum of $2,000 as liquidated damages, and not as a penalty."

Thus, by the express terms of the contract, upon the happening of the contingency that the lessors would resort to dispossess proceedings to recover possession of the property in consequence of the tenants not complying with their obligation, this sum of money, which amounted to two months' rent, should be retained as the damages which the parties had agreed upon would be caused by a termination of the lease. This sum certainly was not disproportionate to the amount of damages which might reasonably be expected to flow from such a violation by the tenant of the covenant to pay the rent and keep the property in repair, and to perform the other obligations which they assumed by the lease. The parties were of full age, with ability to contract. The clause of the lease in question anticipates the possibility of a termination of the lease by dispossess proceedings. There is nothing unconscionable in such an agreement. The question solely was whether a payment made by the tenant to the landlord should or should not be recovered back at the termination of the lease. The deposit was made, not as security for the rent, but as security for the faithful perform-

ance of all the covenants and conditions of the lease on the part of the tenants. The lease also expressly provides that this sum of $2,000 should be repaid to the tenants if the landlord sold the property and so terminated the term demised; and the lease further provides that the landlord was to pay 3 per cent. interest upon the $2,000; and, upon the tenants well and faithfully keeping and performing all the covenants and conditions of the lease, the tenants, upon the termination of the lease at the end of the term, should be entitled to a return of said deposit of $2,000. These are the only provisions for the return of the deposit, and we have, then, the express understanding, to which attention has been called, that, if the tenants are dispossessed, the landlord should have the right to retain the said sum of $2,000 as liquidated damages. Thus it seems to me that the parties have expressed their intention as clearly as it should be expressed, and this case is one in which the agreement of the parties should be enforced.

I therefore think that the determination of the Appellate Term should be reversed, and the judgment entered in the City Court affirmed, with costs to the appellant in all courts.

SCOTT, J., concurs.