## STIMPSON v. MINSKER REALTY CO. et al.

(Supreme Court, Special Term, New York County. June 18, 1915.)

1. DAMAGES &#9901;77—LIQUIDATED DAMAGES—CONSTRUCTION OF CONTRACT.
    Whether a provision shall be construed as providing for liquidated damages, and not for a penalty, depends on the intention of the parties and the nature of the transaction.
    [Ed. Note.—For other cases, see Damages, Cent. Dig. § 156; Dec. Dig. &#9901;77.]

2. DAMAGES &#9901;81—LIQUIDATED DAMAGES—BREACH OF COVENANTS IN LEASE.
    Where the parties to a lease expressly stipulated that a sum deposited by the lessee as security for performance of his covenants should be retained by the lessor as liquidated damages in case of a breach by the lessee, because the parties could not estimate in advance the actual damages caused by such a breach, and where the circumstances surrounding the making of the lease showed that such damages were not ascertainable, the lessor was entitled to retain the sum deposited on breach of the tenant's covenant to pay rent.
    [Ed. Note.—For other cases, see Damages, Cent. Dig. § 177; Dec. Dig. &#9901;81.]

3. DAMAGES &#9901;81—LIQUIDATED DAMAGES—BREACH OF COVENANT IN LEASE.
    Where such lease was for a term of 10 years, with an option for a further term of 11 years, and the sum deposited was $72,000, or one year's rent, there was no such disproportion between the deposit and the possible damages "apparent on the face of the contract" as would preclude the deposit from being liquidated damages.
    [Ed. Note.—For other cases, see Damages, Cent. Dig. § 177; Dec. Dig. &#9901;81.]

Action by Henry C. S. Stimpson, as receiver of the People's Theater Company, a domestic corporation, against the Minsker Realty Company and others. Complaint dismissed.

Abraham H. Sarasohn, of New York City, for plaintiff. .

Breed, Abbott & Morgan and Herman Joseph, all of New York City, for defendant Minsker Realty Co.

Max D. Steuer, of New York City, pro se.

COHALAN, J. Plaintiff, as receiver in sequestration proceedings, sues to recover the sum of $72,000 deposited as liquidated damages under the terms of a written lease, less the amount due when the tenant was dispossessed. The action was brought in equity, because under the terms of the lease the deposit was made a lien on the demised premises, subject, however to prior mortgages, and the relief prayed for includes the foreclosure of the lien. It appears that on the 20th day of March, 1911, the defendant Louis Minsky by an instrument in writing leased to Joseph Edelstein, Max R. Wilner, and Bores Thomashefsky, as tenants, a building to be erected on the premises at the southwest corner of Chrystie and Houston streets for a term of 10 years, to begin when the building permits should have been issued, and with the privilege to the tenants to renew the same for an additional term of 11 years. Pursuant to provision second of the lease the tenants agreed to and did deposit as security for the performance of all of its terms, and as liquidated damages in the event of a breach thereof, the sum of $72,000, which the parties expressly stipulated was to be liquidated damages. The landlord subsequently assigned his interest in the lease to the defendant Minsker Realty Company, and the tenants assigned their interest to the People's Theater Company, a corporation of which they and two others, one Adler and one Kessler, were the only stockholders, officers, and directors. The building was erected and the People's Theater Company entered into possession of the premises. On or about May 7, 1914, a final order was made in favor of the landlord, awarding the possession of the premises to it for nonpayment of rent on the part of the People's Theater Company. The question for determination is whether or not, under the provisions of the lease and on account of the failure of the tenant to comply with the terms thereof, the defendants are now entitled to retain as liquidated damages the deposit of $72,000.

[1, 2] Under the established rule of law in this state the question as to when a provision for liquidated damages shall in fact be construed as liquidated damages and not as a penalty depends upon the intention of the parties and the nature of the transaction. Caesar v. Rubinson, 174 N. Y. 492, 67 N. E. 58. In that case the court said:

"The circumstance that the deposit is described in the lease as liquidated damages for a breach of the agreement is not at all conclusive. The character of the deposit, whether liquidated damages or a penalty, depends upon the intention of the parties as disclosed by the situation and by the terms of the instrument. The deposit is not necessarily to be regarded as liquidated damages, although it is expressly so stated in the instrument. Whether it is that or a penalty depends upon the nature of the transaction and the intention of the parties. This has been frequently held in the case of an ordinary lease and where the amount was largely out of proportion to the damages suffered by the breach of the lease. Claude v. Shepard, 122 N. Y. 397 [25 N. E. 358]. * * * Where the language of such a provision specifying the amount of damages to be paid in case of a breach of the contract is clear and explicit to that effect, the amount is to be deemed liquidated damages when the actual

damages contemplated at the time the agreement was made are in their nature \* \* \* unascertainable with exactness and may be dependent upon extrinsic considerations and circumstances, and the amount is not on the face of the contract out of all proportion to the probable loss. Curtis v. Van Bergh, 161 N. Y. 47 [55 N. E. 398]; Ward v. Hudson River Bldg. Co., 125 N. Y. 230 [26 N. E. 256]."

It is my view that the intention of the parties as expressed in the written lease and as shown from all the surrounding circumstances was that the deposit was to be considered as liquidated damages, and in case of a default in the payment of the rent that the defendants would be entitled thereto. Feyer v. Reiss, 154 App. Div. 272, 138 N. Y. Supp. 964; Hochman v. Bollt, 152 N. Y. Supp. 1031. As the plaintiff mainly relies upon the case of ·Feinsot v. Burstein, 161 App. Div. 651, 146 N. Y. Supp. 939, affirmed 213 N. Y. 703, 108 N. E. 1093, and as the decisions of this state have sometimes conflicted in dealing with the question of liquidated damages, it will be necessary to consider these three cases in relation to the case at bar. ·

In Feyer v. Reiss, supra, the defendant retained the deposit. The wording of the lease was as follows:

"It being expressly understood and agreed that if the lessees surrender the said premises or are dispossessed therefrom prior to the expiration of this lease in 1914, then and in that event the said eight hundred ($800) dollars, together with any subsequent installments which shall be paid by the lessees as hereinbefore provided, shall belong to the lessor as liquidated and stipulated damages, and the parties hereto agree to stipulate such deposit as liquidated damages because they cannot ascertain the exact amount of damage which the lessor would sustain in the event of any breach or violation hereunder."

In the lease under consideration almost identical words are used, as follows:

"Seventy-two thousand dollars shall remain as a deposit made by the parties of the second part with the party of the first part, which sum of $72,000 shall be as security by the parties of the second part to the party of the first part for the full, complete, and faithful performance of each and every of the terms of this agreement and lease upon the part of the parties of the second part, and it is hereby stipulated and agreed that it is impossible to estimate or determine what the damage would be that would be suffered by the party of the first part in the event of a breach of the covenants by the parties of the second part on their part of any of the terms of this agreement and lease, that said sum of $72,000 is hereby stipulated as liquidated damages to compensate the party of the first part in the event of such breach by the parties of the second part."

In the Feyer v. Reiss Case the premises consisted of eight tenement houses already built, the lease ran for three years at an annual rental of nearly $8,000, and the deposit amounted to two months' rent, and the lease required the lessees to make all inside and outside repairs, ·and to surrender the premises, save ordinary wear and tear, in good condition. In this case the surrounding circumstances are stronger. · When the lease was made the present theater was not in existence.

[3] Under the contract of lease a building costing $667,000 was erected, consisting of two theaters, seating, respectively, 2,400 and 1,600 persons, and an eight-story office building. A deposit of $72,-000 was made before the theater was built and as an inducement to the

construction thereof. The lease was to run 10 years, with an option for 11 years, covering in all 21 years. Hence the deposit was the one twenty-first part of the amount to be paid by the tenants during the entire term.. Moreover, the lease required the tenants to make all inside and outside repairs and in addition to surrender the premises, save ordinary wear and tear, in good condition. In passing upon the surrounding circumstances and upon the terms of the lease in the Feyer v. Reiss Case the court said:

"For aught that appears, there was the possibility that the premises might be cast upon the lessor's hands at any time out of repair and without the assurance that they would be then remunerative by actual tenancies. 'The terms of the instrument' disclose that the intention of the parties was that this deposit was for liquidated damages. We have not only the formal expression 'liquidated damages,' but the affirmative provision in amplification and explanation that the parties have agreed that the deposit is liquidated damages 'because they cannot ascertain the exact amount of damage which the lessor would sustain in the event of any breach or violation hereunder.' I find no excessive disproportion between the deposit and the possible damages, 'apparent on the face of the contract,' to quote the language of White, J., in Sun Printing & Publishing Ass'n v. Moore, 183 U. S. 642 [22 Sup. Ct. 240, 46 L. Ed. 366]. So far as an accurate measurement of damages is concerned we have the formal declaration of the parties that the exact amount cannot be measured, and this, while not conclusive, has some probative force. See Sun Printing & Publishing Ass'n v. Moore, supra. Moreover, I have indicated some of the possible elements of damage which in their nature are not susceptible of accurate measurement; and there was no proof, direct or inferential, to the contrary."

Another case of importance to the controversy is that of Hochman v. Bollt, supra. In that case the plaintiff leased from the defendant a tenement house for a term of three years, with a provision in the lease as follows:

"The party of the second part has this day deposited with the party of the first part the sum of seven hundred and fifty-three and $32/100$ ($753.32) dollars as security for the faithful performance of all terms, covenants, and conditions in the within lease contained; it being expressly understood and agreed that, if the party of the second part surrender said premises or is dispossessed therefrom prior to the expiration of this lease, then and in that event the said sum of seven hundred fifty-three and $32/100$ ($753.32) dollars shall belong to the party of the first part as liquidated and stipulated damages, and the parties hereto stipulate to treat said deposit as such liquidated damages, because they cannot ascertain the exact amount of damages which the party would sustain in the event of any breach or violence hereunder."

The breach in that case, as in the case at bar, was nonpayment of rent. The court, in holding that the deposit constituted liquidated damages and not a penalty, said:

"The parties have by clear language provided that this deposit should be regarded as liquidated damages. Of course, we are not bound by their language if in fact a right to retain this sum upon a breach of the contract would constitute a penalty. Nevertheless it is the duty of the courts to give effect to the intent of the parties, and the clear expression that this sum was to be treated as stipulated damages because the parties 'cannot ascertain the exact amount of the damages' must be given due weight. In this respect the case is almost exactly like the case of Feyer v. Reiss, 154 App. Div. 272, 138 N. Y. Supp. 964, where the court held that the deposit of two months' rent could be retained as liquidated damages. I can find nothing in this case which could reasonably lead to the view that the words used by the parties do not express

their actual intent. Where a man owning a tenement house rents it for three years to one tenant for a fixed rental, he naturally expects some benefit from the lease. Where the tenant breaks his lease, so that the landlord is forced to take proceedings to regain possession, payment of past-due rent and damages for failure to keep the covenant to repair is obviously not full compensation for the tenant's breach, for the landlord is thereby deprived of the benefit which he would have received in the future if the lease had continued in full force and effect. The very difficulty, not to say impossibility, of proving such damages, is in itself a good reason for the parties agreeing in advance to fix the amount of such damages. If that amount is not out of proportion to the probable damages upon such breach, the agreement is undoubtedly enforceable. It certainly would seem that the amount of two months' rent to compensate for damages, past and prospective, is not unreasonable. The appellant maintains, however, that these views are not in accord with the case of Feinsot v. Burstein, 161 App. Div. 651, 146 N. Y. Supp. 939, affirmed 213 N. Y. 703 [108 N. E. 1093]; but a careful reading of the opinion in that case shows that the circumstances and the language of the lease clearly distinguish it. These distinctions are pointed out in my own opinion upon the original appeal in this court, reported in 78 Misc. Rep. 259, 138 N. Y. Supp. 185."

It is manifest that the deposit herein may be deemed liquidated damages and not a forfeiture. This fact is clearer in the present case than it was in the Hochman Case. In the Feinsot v. Burstein Case, supra, relied upon by the plaintiff, a similar deposit was held not to be liquidated damages, but that case is distinguished from the case at bar, both with respect to the words of the lease and the surrounding circumstances thereof. That lease provided:

" * * * The said parties of the second part have deposited with the party of the first part, the sum of two thousand ($2,000.00) dollars * * * as security for the faithful performance of all the covenants and conditions of this lease, on the part of the parties of the second part, and in case of any breach thereof by said parties of the second part, the said amount of money shall be held and retained by the said party of the first part as liquidated damages for said breach. And the parties further agree that in the event that the said parties of the second part shall be dispossessed, on summary proceedings' * * * and to remove them therefrom, that the said party of the first part shall, nevertheless, have the right to retain the said sum of two thousand ($2,000.00) dollars, as liquidated damages, and not as a penalty."

In the present case the parties specifically stipulated that the deposit was liquidated damages for the reason that it was impossible to estimate or determine what damage the lessor would suffer in case of a breach of any provisions of the lease. Moreover, the absence of such a provision as this was given as one of the principal reasons for the decision in the Feinsot Case. Furthermore, in that case the jury found that there were no damages suffered by the lessor except the nonpayment of part of one month's rent, while the testimony in this case is that there were large undetermined damages. All the facts in this case seem in se to conclude the plaintiff. It is undisputed that Thomashefsky and Edelstein proposed that the defendant Minsky should purchase certain property known as the Mace property, at the corner of Houston and Chrystie streets, for the purpose of erecting thereon a theater. As a result of negotiation, the property was pur-chased and a contract was made with Messrs. Edelstein, Thomashefsky, Wilner, Adler, and Kessler for the occupancy of the entire building to be erected thereon at an annual rental of $72,000, to run for ten years, with a further option for eleven years. The money required

to purchase the property and erect the building included the sum of $72,000, deposited by the prospective tenants. Kessler and Wilner were well known and successful managers of Jewish theatrical enterprises, and Thomashefsky and Adler were distinguished actors in Jewish roles. These men alone were competent to conduct an enterprise of such magnitude, and it is obvious that unless Minsky was made secure by tenants of their character he would not have begun the construction of such a building. However, after 6 months dissensions arose among the members of the People's Theater Company, to which corporation the lease had been assigned. Some of the directors desired to get rid of Adler. They notified Minsky that they could not continue unless relieved of liability for the rent of the roof garden and the office building. Thereupon the president of the defendant company sublet a portion of the premises to M. William Minsky for 9 years and 6 months at a yearly rental of $30,000. The People's Theater Company, then undertook to pay for the theater alone the sum of $42,000 per year. Despite this reduction in rent, however, the People's Theater Company soon fell behind in payment of rent and $10,000 of the amount originally deposited was used to make up the deficiency. The April rent was paid personally by Wilner after dispossess proceedings had been begun. The May rent of $3,500 was also unpaid, and it became apparent that the People's Theater Company was no longer able to meet its obligation to pay the rent. It became necessary, therefore, for the owners of the property to protect their interests and to dispossess the tenant. A new lease thereafter was drawn to run for 10 years at an annual rental of $39,000, instead of $42,000.

It is a peculiar circumstance that the new tenants, who are still in possession, are the original lessees and are the parties who composed the People's Theater Company, with the single exception of Adler. That the default of the People's Theater Company has resulted in serious loss to the landlord there can be no question. Prior to the breach there was a single tenant paying $72,000 per year net rental. This tenant was charged with the cost of lighting, heating, repairing, and general superintendence of the building. After the breach there was one tenant paying $39,000 gross rental per year, with numerous other tenants whose rent aggregated $23,000 per year. It was necessary to secure other tenants, and the owners were put to expense in making required alterations; and the expense of supplying electricity, coal, and service, costing thousands of dollars per year, was an additional burden upon the owners. From the testimony it would appear that the net rents of $72,000 per year have now fallen to a gross rental of about $62,000 per year. Furthermore, there is the contingency that the tenants of the theater will default again in the payment of their rent, and the owners then will face the difficult problem of finding new tenants for a unique theater proposition or be forced to occupy it themselves. It is significant, too, that the parties to the original lease are not seeking to regain the money which they stipulated should be considered by them as liquidated damages. All of the foregoing facts seem to indicate that there is no excessive disproportion between the deposit and the damages—certain and otherwise—suffered by the owners

of the property. It follows, and I am satisfied that the contracting parties by the terms of the lease clearly so indicated their intention, that the sum deposited should be retained by the lessor, in the event of a breach by the lessee, as liquidated damages.

The complaint is dismissed.