effect, it follows that the demurrer to the said plea must also be over-ruled, and the same is true of the plea "by way of further offset," contained in paragraphs "twelfth" and "thirteenth" of the answer.

[3] The other pleas, "by way of offset," contained in paragraphs "fourteenth, fifteenth, sixteenth, nineteenth, twentieth, twenty-first, and twenty-second," respectively, of the answer, to which demurrers are interposed, are claims for damages alleged to have been sustained by the landlord by reason of the tenant's alleged failure to comply with covenants of the lease to keep the premises in repair, to obtain and keep accident liability insurance, and to pay for gas consumed on the premises. It is clear that they are proper offsets to the cause of action alleged in the complaint, and the demurrers to them are also overruled.

The defendant's motion for judgment on the pleadings is granted, with $10 costs, with leave to the plaintiff to withdraw the demurrer within 10 days, upon payment of said costs.

---

(173 App. Div. 610)

### HALPERN v. MANHATTAN AVE. THEATER CORP.

(Supreme Court, Appellate Division, First Department.　July 10, 1916.)

1. LANDLORD AND TENANT ☞184(2)—DEPOSIT BY LESSEE—RECOVERY—PRE-MATURE ACTION.

Under a lease for 4 years and 2 months at an annual rental of $13,000, payable monthly, providing that the lessee should deposit $6,000 as security for the lease, and that, if the lessee was dispossessed, the amount should belong to the lessor as liquidated damages, and that, if all the covenants of the lease were complied with, the deposit should be returned to the lessee at the expiration of the lease, or its termination by consent, etc., considered with the lessee's covenants to pay certain charges, and that on nonpayment of rent the lessor might dispossess the lessee, who was to remain liable for the difference between the rent reserved and that thereafter received, the deposit might be retained by the lessor until the expiration of the original term, to protect it from actual damages from the lessee's breach of his covenants, so that the lessee could not maintain his action to recover back his deposit until the expiration of the term.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 745–748; Dec. Dig. ☞184(2).]

2. LANDLORD AND TENANT ☞198—DISPOSSESSION—LESSEE'S LIABILITY.

While a lease is terminated by the dispossession of a tenant, the contractual relationship between the parties is not thereby terminated, and the tenant's obligation to pay damages sustained by the landlord in consequence of his own failure to pay rent survives the severance of the relation.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 763; Dec. Dig. ☞198.]

Clarke, P. J., dissenting.

Appeal from Special Term, New York County.

Action by Isidor Halpern against the Manhattan Avenue Theater Corporation. From an order granting defendant's motion for judgment on the pleadings (consisting of a complaint and a demurrer there-

to), and denying plaintiff's motion for judgment thereon, plaintiff appeals.    Order affirmed.

Argued before CLARKE, P. J., and LAUGHLIN, DOWLING, PAGE, and DAVIS, JJ.

Henry Pearlman, of New York City, for appellant.

Clayton J. Heermance, of New York City, for respondent.

DOWLING, J.   The complaint herein sets forth that about June 8, 1915, the plaintiff and his copartner, Isidor H. Gertler (who has assigned his rights and interest to the plaintiff), entered into an agreement in writing with the defendant, a domestic corporation, whereby the latter leased to the former, and the former hired from the latter, the premises known as 200 Manhattan avenue, in the borough of Manhattan, city of New York, for a term of 4 years and 2 months, from the 1st day of June, 1915, to the 1st day of August, 1919, at the yearly rental of $13,000, payable in equal monthly installments on the 1st day of each month in advance.   The building in question was constructed for use as a moving picture theater only, and was leased for such purpose. A copy of the lease is annexed to the complaint, and among its provisions, specifically quoted in the complaint, is the following:

"Fifteenth. The lessee, party of the second part, has this day deposited with the lessor, party of the first part, the sum of six thousand ($6,000) dollars, as security for the faithful performance of all the terms, covenants, and conditions in the within lease contained; it being expressly understood and agreed that if the lessee, party of the second part, abandons said premises or is dispossessed therefrom on account of any breach of this lease by the tenant, prior to the expiration of this lease, then and in that event the said sum of six thousand ($6,000) dollars shall belong to the lessor, party of the first part, as liquidated and stipulated damages, in addition to such other damages as the lessor, party of the first part, may be able to prove; and the parties hereto stipulate to treat said deposit as such liquidated damages, because they cannot ascertain the exact amount of damage which the party of the first part would sustain in the event of any breach or violation hereunder. If, however, all the terms, covenants, and conditions are fully complied with, then and in that event the said security shall be returned to the lessee, party of the second part, at the expiration of this lease or its sooner termination, pursuant to the terms of the lease or by consent. The lessor also agrees to pay interest at the rate of four per cent. (4%) per annum on the said deposit, payable to the tenant on the 1st days of August and February in each year. The tenant shall have, and has, a lien on said premises to secure the repayment of said deposit of six thousand ($6,000) dollars and interest aforesaid, but only so long as all the covenants, conditions, and agreements of this lease to be performed by the tenant shall have been complied with by the tenant, such lien to be co-extensive with the within lease, and at all times subject and subordinate to the mortgage now on said premises, or to the mortgage or mortgages which may hereafter be placed thereon in accordance with paragraph 13 hereof."

Plaintiff and his copartner deposited the $6,000 in question and entered into possession of the premises, and it is alleged that they "duly complied with and performed all the covenants, terms, and conditions of the said written agreement on their part to be performed, except that the plaintiff and his copartner, Isidor H. Gertler, have omitted to pay the rent for the month of June, 1915."   It is then alleged that on June 15, 1915, defendant, as landlord, instituted summary proceedings

for the removal of the plaintiff and his copartner from the leased premises for nonpayment of the rent for June, 1915, amounting to $1,083.73 (being the first month's rent due under the lease), and a precept was duly served upon the tenants, requiring them to remove from said premises or show cause why possession thereof should not be delivered to the landlord, which proceedings ended in judgment in favor of the landlord for the removal of the plaintiff and his copartner as tenants from the premises described in the lease, and a warrant was duly issued and executed, and plaintiff and his copartner removed from the demised premises, and the landlord entered into possession thereof.

The plaintiff's complaint then sets forth two paragraphs stating conclusions of law: First, that the lease was canceled and annulled by the summary proceedings, except that the defendant, as landlord, was entitled to receive the rent for the month of June; and, second, that the conditions of the lease set forth in paragraph 15 thereof, hereinbefore quoted, are null and void, because they were contrary to law and public policy, and amount to a forfeiture, and did not constitute liquidated damages, but are in truth a forfeiture and penalty. It is then alleged that the plaintiff and his copartner were entitled to the return of $5,104.17, which has not been paid over to them, although demanded.

[1, 2] The lease in its entirety being annexed to and made a part of the complaint, the defendant's demurrer is addressed to the insufficiency of the complaint, as it is the defendant's contention that the lease shows that the conditions under which the $6,000 deposit was made have not yet been fully complied with, and that the question of their fulfillment cannot be determined until the termination of the term of the lease on August 1, 1919, and that therefore this action was prematurely brought. It is plaintiff's contention that paragraph 15 of the lease, while in terms providing that the sum of $6,000 should constitute liquidated damages in case of the tenants' dispossession from the demised premises, in reality is a penalty and works a forfeiture, as the amount of the deposit is out of all proportion to any damage that can possibly arise upon a breach of the lease.

The provision that a sum certain should be retained as liquidated damages was before the court in Feyer v. Reiss, 154 App. Div. 272, 138 N. Y. Supp. 964, where the language used in the clause then under consideration was so similar to that employed in the lease in question as to indicate that the former lease had furnished the model for the particular clause in this one. In that case the provision read as follows:

"It being expressly understood and agreed that if the lessees surrender the said premises, or are dispossessed therefrom, prior to the expiration of this lease in 1914, then and in that event the said $800, together with any subsequent installments which shall be paid by the lessees as hereinbefore provided, shall belong to the lessor as liquidated and stipulated damages, and the parties hereto agree to stipulate such deposit as liquidated damages, because they cannot ascertain the exact amount of damage which the lessor would sustain in the event of any breach or violation hereunder."

In that case the deposit was $800, and the further sum of $516 was to be deposited in monthly installments. The lease was for three

years at an annual rental of nearly $8,000. The court (154 App. Div. at page 275, 138 N. Y. Supp. 966) said that the terms of the instrument disclosed that the intention of the parties was that this deposit was for liquidated damages; that—

"we have not only the formal expression 'liquidated damages,' but the affirmative provision in amplification and explanation that the parties have agreed that the deposit is liquidated damages, 'because they cannot ascertain the exact amount of damage which the lessor would sustain in the event of any breach or violation thereunder.' I find no excessive disproportion between the deposit and the plaintiff's damages 'apparent on the face of the contract,' to quote White, J., in Sun Printing & Publishing Association v. Moore, 183 U. S. 672 [22 Sup. Ct. 240, 46 L. Ed. 366]. So far as an adequate measurement of the damages is concerned, we have the formal declaration of the parties that the exact amount cannot be measured, and this, while not conclusive, has some probative force."

In Feinsot v. Burstein, 161 App. Div. 651, 146 N. Y. Supp. 939, affirmed without opinion 213 N. Y. 703, 108 N. E. 1093, the deposit was of $2,000 as security for the performance of the terms of a lease having four years to run at a yearly rental of $12,000. There was no such provision in that lease as was present in the Feyer Case, supra, and the court in its opinion distinguished the Feyer Case on the ground that in the latter the lease was clear and definite as to the character of the deposit; further, that the court had found there was no excessive disproportion between the deposit and the plaintiff's damages; and that in the case then under consideration the jury had found that the only covenant breached by the tenant was that to pay rent.

There is an element in this case which is present in neither the Feinsot nor the Feyer Case, and that is that, besides providing that the $6,000 should be retained by the landlord as liquidated damages, it is further provided that he shall have, in addition, "such other damages as the lessor, party of the first part, may be able to prove." This would apparently indicate that, besides his actual damage, the landlord was to retain possession of the $6,000 as a penalty, for it would seem that the difference between the rent reserved and that received by the landlord for the balance of the term, together with any payments made by him for water taxes and fire insurance or other charges covered by the lease, would be the element of his damage which should be susceptible of proof. I should therefore deem this case to come within the scope of the Feinsot rather than the Feyer Case, were it not that there are further covenants upon the part of the tenants in the lease in question which were not present in the Feinsot Case, and which in my opinion make it impossible for the plaintiff to establish his right to the deposit, or any part thereof, until the termination of the term reserved in the lease. While it is quite true that the lease as such is terminated by the dispossession of a tenant by the landlord, still the contractual relationship between the parties is not terminated, and the tenant's obligation to pay damages sustained by the landlord in consequence of his failure to pay rent subsists, and survives the severance of the relation of landlord and tenant by the summary proceedings. Slater v. Von Chorus, 120 App. Div. 16, 104 N. Y. Supp. 996. So does any other obligation which the tenant expressly assumes by the lease, apart from the liability to pay rent as such.

Under the lease in question, the tenants bound themselves, in addition to the rental of the premises, to the following payments, briefly stated: By the second paragraph of the lease they agreed to pay all Croton water charges during the term of the lease, and to pay premiums on policies of fire insurance, to an amount not exceeding $300 per year. By the third paragraph they agreed to pay all costs and expenses for the maintenance of the building and repairs therein, and to make all repairs, both interior and exterior, during the term of the lease, that might be necessary to preserve them in good order and condition and equal to the original workmanship upon the building. By the seventh paragraph they agreed to pay all sums necessary to permit the operation of the premises as a moving picture theater. By the eighth paragraph they agreed to comply with all rules, orders, ordinances, and regulations of all city and state authorities, departments, bureaus, and boards at their own expense, and to comply with all similar rules and regulations of the New York Board of Fire Underwriters for the prevention of fires, and not to create or permit any nuisance on the leased premises. By the eleventh paragraph they agreed to deliver up the building at the end of the term in as good order and condition as it was when leased, and to replace, keep, and maintain in good order and condition every part of the premises, interior and exterior, including machines, electric signs, lighting fixtures, lamps, carpets, and all the property belonging to the lessor therein. By the twelfth paragraph they agreed that in case of the nonpayment of rent, or any default in any of the covenants or agreements of the lease, the lessor had the right to re-enter the premises, either by force or otherwise, and dispossess the lessee, and the lessee agreed that he would thereupon pay the lessor monthly the difference between the rent reserved by the lease and the amount received from a new tenant. The twenty-second paragraph of the lease is as follows:

"That in the event of the lessee's dispossession by summary proceedings, or if default shall be made in the payment of the rent, or any part thereof, or in the performance of any of the covenants herein contained, or if the said premises shall become vacant during said term, the lessor, or its representative, may re-enter and resume possession of the same, either by summary or other legal proceedings, or by force or otherwise, without being liable to prosecution therefor, and may at its option relet the said premises, as the agent of said lessee, but in the name of said lessor, and receive the rent thereof applying the same first to the payment of such expense as it may be put to in re-entering and reletting, then to the payment of the rent due by these presents, the remainder, if any, to be paid over to the lessee, who shall remain liable for any deficiency. In the event of default in the performance of any of the covenants herein contained re-entry or notice of re-entry shall not be a condition precedent to summary proceedings. The lessee hereby expressly waives the service of any notice in writing of intention to re-enter as provided for in section 1505 of the Code of Civil Procedure, and in the third section of an act entitled 'An act to abolish distress for rent and for other purposes,' passed May 13, 1846 [Laws 1846, c. 274]."

By the twenty-sixth paragraph of the lease the amount of fire insurance to be carried and paid for by the lessee is to be not less than $60,000 upon the building and structure. By the twenty-seventh paragraph the lessee covenanted to hold the lessor harmless from all penalties, claims, or demands that might be made by reason of any neg-

lect or default in maintaining the premises, or any failure to observe the covenants and conditions of the lease. The twenty-eighth paragraph of the lease is as follows:

"It is further covenanted and agreed that the lessee will save and keep harmless and indemnify the lessor from any claim or demand for injury to property or to any person happening on or about said premises, no matter how occurring."

The thirty-second paragraph provides:

"If the party of the first part shall recover and take possession of the said premises as aforesaid, and shall be unable to relet the same and obtain sufficient rent therefor to make up the amount of rent hereby reserved, and also any sum of money required by the terms hereof to be paid by the party of the second part, the party of the second part shall and will pay the party of the first part any and all loss or difference of rent for the residue of said term, and any and all loss or deficiency' of any other sum of money required by the terms hereof to be paid to it."

The fifteenth paragraph shows that the deposit was made as security for the faithful performance of all the terms, covenants, and conditions of the lease. Disregarding the absolute right of the defendant to retain all of said deposit, on the ground that the agreement therefor created a penalty and forfeiture, and not liquidated damages, the deposit would still be rightfully retained by the defendant until the expiration of the original term of the lease to protect it against any actual damage it might sustain by reason of any breach of the covenants upon the part of the lessees heretofore quoted, all of which constituted a valid agreement on their part to pay the damages, if any, sustained by the landlord, which covenants survived the extinguishment of the relation of landlord and tenant. The plaintiff, therefore, cannot maintain his action to recover back this deposit until the expiration of the period of the lease, unless every contingency under which the defendant might have had a claim for damages against said fund has been exhausted. See opinion of Mr. Justice Page in Blumberg v. Corday, 160 N. Y. Supp. 613, affirmed without opinion 155 N. Y. Supp. 1095.

The order appealed from will therefore be affirmed, with $10 costs and disbursements. Order filed.

LAUGHLIN, PAGE, and DAVIS, JJ., concur. CLARKE, P. J., dissents.