HENRY C. S. STIMPSON, as Receiver of the PEOPLE'S THEATRE
COMPANY, a Domestic Corporation, Appellant, *v.* MINSKER
REALTY COMPANY and Others, Respondents.

First Department, April 20, 1917.

Landlord and tenant — when amount stipulated in lease as "liquidated
damages" constitutes penalty — right of tenant to recover deposit
upon being dispossessed for failure to pay rent.

Where the damages to a landlord on the breach of a lease by the tenant's
failure to pay rent are fixed and certain, and are out of all proportion to
the sum reserved in the lease for the faithful performance thereof, said
sum, though stipulated as "liquidated damages," is clearly a forfeiture
or a penalty, and the tenant may recover the same upon being removed
by summary proceedings.

SCOTT, J., dissented, with opinion.

APPEAL by the plaintiff, Henry C. S. Stimpson, as receiver,
from a judgment of the Supreme Court in favor of the defend-
ants, entered in the office of the clerk of the county of New
York on the 14th day of June, 1916, dismissing the complaint
upon the merits upon the decision of the court after a trial at
the New York Special Term.

*Abraham H. Sarasohn,* for the appellant.

*Max D. Steuer,* for the respondents Max D. Steuer and
Bertha Steuer.

DAVIS, J.:

On March 20, 1911, Louis Minsky leased certain premises on
the corner of Chrystie and Houston streets to Joseph Edelstein,
Max R. Wilner and Boris Thomashefsky. Thereafter the
lessor assigned his interest in the lease to the Minsker Realty
Company and the lessees assigned their interest to the People's
Theatre Company. The plaintiff is receiver of the lessee in
sequestration proceedings, the People's Theatre Company, and
he brings this action to recover from the lessor, Louis Minsky,
$68,500, part of a deposit made by the lessee with the lessor
under the lease in question, and to foreclose a lien against the
premises for that amount.

By the terms of the lease the lessor leased to the lessees a building to be erected on the corner of Chrystie and Houston streets, which should contain a theatre of a certain type, an inclosed roof garden, together with stores, meeting rooms and a ballroom, at a yearly rental of $72,000, payable monthly in advance. The term of the lease was to begin when the building was completed and was to run for ten years with the privilege of renewal for eleven years more. The lease provided that the lessees should deposit with the lessor $72,000 as security in various amounts and at different times preceding the completion of the building. Then follows the provision, of so much importance in this case, that "Upon the completion of the building the said Seventy-two thousand ($72,000) Dollars shall remain as a deposit made by the parties of the second part with the party of the first part, which sum of Seventy-two thousand ($72,000) Dollars shall be as security by the parties of the second part to the party of the first part for the full, complete and faithful performance of each and every of the terms of this agreement and lease upon the part of the parties of the second part, and *it is hereby specifically stipulated and agreed* that as it is impossible to estimate or determine what the damage would be that would be suffered by the party of the first part in the event of a breach of the covenants by the parties of the second part on their part of any of the terms of this agreement and lease, that said sum of Seventy-two thousand ($72,000) Dollars is hereby stipulated as liquidated damages to compensate the party of the first part in the event of such breach by the parties of the second part." The parties also agree that if the lessees shall have complied with the terms of the lease, $52,000 of the deposit of $72,000 shall be applied in proportionate monthly payments on account of the rent for the last year of the term, and at the end thereof the remaining $20,000 shall be repaid to the lessees.

The lease also contains the following clause:

"*Twenty-first : It is hereby mutually consented and agreed* that the Seventy two Thousand ($72,000) Dollars deposited by the parties of the second part with the party of the first part shall become a lien against the property the same as if a mortgage had been executed upon the property to secure the re-payment

First Department, April, 1917.    [Vol. 177.

thereof; the said lien, however, to be subsequent to a mortgage or mortgages aggregating Four Hundred Thousand ($400,000) Dollars and to become and remain such lien until the expiration of this lease."

The lessee entered into possession of the completed building September 24, 1912, and paid the rent until May 1, 1914, when it failed to pay the rent then due, amounting to $3,500. Summary proceedings were then begun and the lessee was removed from the premises, and the lessor was put in full possession on May 12, 1914. On September 2, 1914, the plaintiff as receiver brought this action to recover the deposit of $72,000 less $3,500, the amount of rent due at the time the lessee was dispossessed. Originally the rent was $6,000 monthly. It was afterwards reduced to $3,500 under the following circumstances: On September 24, 1912, the lessee finding that it could not rent certain parts of the building so notified the lessor. Thereupon, through the efforts of the lessor, that part of the building designed for offices and the roof theatre was sublet to Michael William Minsky for $30,000 a year. This sublease was guaranteed by the defendant, the Minsker Realty Company. Under the terms of this sublease $10,000 was deposited as security, and as the court has found, the result of this was to reduce the lessee's rent to $42,000, and the amount remaining with the landlord as security was reduced by $10,000.

The court at Special Term decided that the deposit of the $72,000 was made as liquidated damages and not as a penalty, and, therefore, was not recoverable by the plaintiff, and dismissed the complaint on the merits. The plaintiff claims that the deposit was a penalty, and, therefore, recoverable in this action.

The trial court made findings among which were the following:

"7. The intention of all the parties to the said lease was that in the event of a breach by the lessees, the lessor should retain the said sum of $72,000 as liquidated damages for the unascertainable damage which would be suffered by the lessor in such event."

"22. There is no excessive disproportion between the amount of said deposit remaining and the damage, certain and other-

wise, that has been and will be sustained by the defendant Minsker Realty Company and by the other owners by reason of said breach of said lease."

While this lease expressly provides that the $72,000 shall be deemed to be liquidated damages, it does not follow that the provision must be enforced as liquidated damages.

In the case of *Caesar* v. *Rubinson* (174 N. Y. 492, 496) it was held that whether the deposit shall be deemed liquidated damages or a penalty, depends upon the intention of the parties and the nature of the transaction. In any given transaction, if the surrounding circumstances at the inception of the lease are such as to show that the retention of the deposit by the lessor would result in penalizing the lessee by making him pay an amount greatly in excess of and out of all proportion to the probable loss caused by the failure to pay rent, it will be treated as a penalty, notwithstanding the intention of the parties. The intention, though very important in determining the character of the deposit, is not always controlling upon that question. As was said by the court in *Caesar* v. *Rubinson* (*supra*): " The deposit is not necessarily to be regarded as liquidated damages, although it is expressly so stated in the instrument." (See *Wilkinson* v. *Colley*, 164 Penn. St. 35, 40.)

At the time of the execution of the lease in question here there was nothing in the nature of the case that made it inherently impossible to determine the kind and approximate extent of the damage resulting from a breach of the covenants of the lessee. It follows, therefore, that the statement contained in the 2d paragraph of the lease in question, that it is impossible to estimate or determine what the damages would be in the event of a breach of the covenants by the lessee, is not in accordance with the fact, except so far as it refers to an exact estimate of the damage.

We also think that the $72,000 retained by the lessor is out of all proportion to the probable loss in case of a breach as viewed at the time the lease was made. In the event of a breach by the lessee the lessor could assume absolute control of the premises and relet them for its own account. It is hardly credible that it would fail to relet them to advantage, situated as they were in the midst of a numerous and theatre-going

population.  Yet, with this almost certain prospect of obtaining another tenant in place of the defaulting lessee, the lessor takes the position that the large sum of $72,000 was a reasonable amount to be paid by the lessee as liquidated damages for its failure to pay one month's rent.  While perhaps it is not relevant to the decision of this appeal, it is nevertheless interesting to note that the evidence discloses that the premises occupied by the lessee, and for which the lessor had been receiving $42,000 rent, were relet for use as a theatre on the day after the eviction for a term of five years at a rental of $39,000.  Under this lease the lessee could be dispossessed for failure to make inside repairs or for failure to keep insured, and in that event, if the lessor's view should prevail, he would have a right to retain $72,000 as liquidated damages for the breach of these covenants, notwithstanding the lessee's ability and intention to pay the rent for the full term.  Or, the lessee might have paid the rent for every year of the term except the amount due at the beginning of the last year, and for this default the lessor, if his contention be sound, could retain $72,000 as liquidated damages and in addition have possession of the premises.

These considerations compel the conclusion that the disproportion between the amount of the deposit and the probable damage of the lessor arising from a possible breach by the lessee is so great as to prevent treating this deposit as liquidated damages and to emphasize its penal aspect, a result which entitles the plaintiff to recover the deposit in this action.  But it is claimed that the landlord had a right under the lease to re-enter and relet the premises as agent of the tenant, holding the $72,000 deposit to make up any deficiency, and that this covenant, therefore, survived the termination of the lease by summary proceedings, making this action premature and requiring the dismissal of this complaint.  The only covenant in this lease giving the right to sublet is the 15th.  It is as follows:

"*Fifteenth.* If the said premises or any part thereof shall become vacant during said term, the party of the first part or his representative may re-enter the same without being liable to prosecution therefor, and relet the said premises as the agent of said tenant, and receive the rent thereof, applying the

same, first to the payment of such expenses as he may be put to in re-entering, and then to the payment of the rent due by this lease, the balance, if any, to be paid over to the parties of the second part, who shall remain liable for any deficiency."

It has been held that where the word "re-enter" alone is used in this covenant it means re-enter by ejectment only, and not by summary process. (*Michaels* v. *Fishel*, 169 N. Y. 381.) It has also been held that where the covenant expressly states that there may be re-entry in case of vacancy, without stating that there may be re-entry for breach of other covenants, the right to re-enter is limited to a case of vacancy and there may not be a re-entry for failure to pay rent. As was said by the court in the case of *Wolf* v. *Rudinsky* (135 App. Div. 172): "The privilege of the landlord to re-enter and let the premises as the agent of the tenant is expressly limited to the contingency of the premises being vacant, and there is neither allegation nor stipulation that they ever did become vacant." The case last cited, like the one at bar, is one in which the tenant was dispossessed by summary proceedings for non-payment of rent.

These considerations lead necessarily to the conclusion that the defendant landlord has no right to sublet the premises in question as the agent of the lessee and to retain the deposit as security for any deficiency.

Had the covenant in question contained a provision that the landlord might re-enter "by force or otherwise" in case of breach of the covenant to pay rent and to relet the premises as agent of the lessee, the covenant to pay the rent would have survived eviction by summary process and this action would have been premature, as in the recent case of *Halpern* v. *Manhattan Avenue Theatre Corporation* (173 App. Div. 610; affd., 220 N. Y. 655). In that case the lessee sought to recover a deposit of money as liquidated damages and the court held that the action was prematurely brought because the lease contained covenants expressly providing that the obligation to pay rent should survive dispossession by summary proceedings. For instance, in the 12th paragraph of the lease it was provided that in case of non-payment of rent or default of any of the covenants of the lease, the lessor might re-enter by sum-

mary process, in which event the lessee agreed to pay the lessor each month thereafter the difference between the rent reserved in the lease and the amount received through a reletting by the lessor.  Again the 22d paragraph of the Halpern lease expressly gave the lessor · the right to re-enter by summary process and relet in the event of a vacancy, default in payment of rent, or in case of violation of any covenant of the lease.   So in the 32d paragraph of the lease the lessee, in  case of eviction by summary process, agrees to indemnify the lessor for any deficiency of rent after reletting. After pointing out very clearly these peculiar features of the Halpern lease, the court held that they were express agreements for the survival of the covenant to pay rent beyond the termination of the relation of landlord and tenant and that, therefore, the action to recover the deposit was premature. (See, also, *Anzolone* v. *Paskusz,* 96 App. Div. 188.)

The lease in the case at bar contains no covenant which survived the termination of the relation of landlord by summary process for failure to pay the rent.   Therefore, the right to retain this deposit must depend upon whether this deposit should be regarded as liquidated damages under the circumstances of the case at the time the lease was entered into, or as a penalty.   We are of opinion that the deposit of the $72,000 must be regarded as a penalty recoverable in this action.

The plaintiff sues for the amount of the deposit less the amount of rent due at the date of its eviction.   While the defendant claims that it sustained other damage beyond the loss of one month's rent, it has not pleaded any counterclaim therefor, nor has it proved other damage resulting from the lessee's breach.   There was some evidence of expenditures made by Michael William Minsky in that part of the premises of which he became the lessee in March, 1913, but this evidence has no bearing upon the question of the damages caused by the failure to pay rent in May, 1914, more than one year after.

Accordingly the judgment dismissing the complaint on the merits should be reversed, with costs, and judgment directed for the plaintiff as demanded in the complaint, with costs,

except that there be no personal judgment against the defendant Max D. Steuer, the parties having stipulated to that effect.

LAUGHLIN, J., concurred; SCOTT, J., dissented.

CLARKE, P. J. (concurring):

I concur upon the ground that there is no liability surviving termination of the lease by summary proceedings.

SHEARN, J. (concurring):

I concur in the reversal of this judgment upon the ground that, there being no obligation of the tenant surviving the termination of the lease by summary proceedings, the damages are fixed and certain at the time of the breach, and such damages are out of all proportion to the sum reserved, which, though called "liquidated damages," is plainly a forfeiture or penalty.

SCOTT, J. (dissenting):

In my opinion the judgment appealed from is right and should be affirmed. We have here the old question, so much discussed in the authorities, whether a sum of money deposited with a landlord by his tenant, and declared to be deposited as liquidated damages in case of a breach, should be treated as a penalty, and, therefore, not to be retained after the breach has occurred.

At first glance many of the authorities on the subject would appear to be contradictory, but that appearance is due in the main to the differing circumstances under which the several leases considered have been made, and in part to the strong disinclination which the courts at one time exhibited to enforcing a penalty, whether provided for by a lease or by any other form of contract. The last-mentioned reason for refusing to enforce covenants for the payment of stipulated sums as liquidated damages is by no means so potent as it once was. As was remarked by Mr. Justice PECKHAM in *United States* v. *Bethlehem Steel Co.* (205 U. S. 105, 119): "The courts at one time seemed to be quite strong in their views and would scarcely admit that there ever was a valid contract providing for liquidated damages. Their tendency was to construe the

language as a penalty, so that nothing but the actual damages sustained by the party aggrieved could be recovered. Subsequently the courts became more tolerant of such provisions, and have now become strongly inclined to allow parties to make their own contracts, and to carry out their intentions, even when it would result in the recovery of an amount stated as liquidated damages, upon proof of the violation of the contract, and without proof of the damages actually sustained." In *Sun Printing & Pub. Assn.* v. *Moore* (183 U. S. 642, 660 *et seq.*) the present chief justice of the United States Supreme Court exhaustively examines the authorities upon this subject in England and in this country and especially in this State, and concludes by citing with approval from *Clement* v. *Cash* (21 N. Y. 253, 257) as follows: "When the parties to a contract, in which the damages to be ascertained, growing out of a breach, are uncertain in amount, mutually agree that a certain sum shall be the damages in case of a failure to perform, and in language plainly expressive of such agreement, I know of no sound principle or rule applicable to the construction of contracts that will enable a court of law to say that they intended something else. * * * When they declare, in distinct and unequivocal terms, that they have settled and ascertained the damages to be $500, or any other sum to be paid by either failing to perform, it seems absurd for a court to tell them that it has looked into the contract and reached the conclusion that no such thing was intended; but that the intention was to name the sum as a penalty to cover any damages that might be proved to have been sustained by a breach of the agreement." The omitted portions of the quotation refer to cases wherein the language of the covenant is doubtful, which is not this case, and to the power of a court of equity (but not of law) to give relief against a stipulation for excessive damages in certain cases. Although the present action is brought in equity because it seeks, besides recovering the deposit, to enforce a lien upon the demised premises, the complaint does not ask that the covenant as to liquidated damages be modified or declared inequitable, but, so far as concerns the right to recover the amount, it stands upon plaintiff's legal right.

The general rule for determining whether a sum deposited

as security shall in case of breach be considered as liquidated damages or as a penalty is that it depends upon the intention of the parties at the time the contract is made, and in ascertaining what that intention was we are to consider not only the language they used, but the conditions which existed when the contract was made. (*Caesar* v. *Rubinson,* 174 N. Y. 492.) What the court is concerned with is to construe and enforce the contract which the parties made for themselves, not to make a new contract for them. Therefore, while the language alone is not always sufficient to establish the real intention, and the surrounding circumstances are to be taken into account, these circumstances are those which exist at the time the parties contracted, and the probabilities as to the extent of damage by a breach in the future which are apparent to the parties at that time, not at some future time and under circumstances which could not have been foreseen with any certitude when the contract was made. If at the time the lease in suit was made it may have been impossible to estimate the amount of the loss to the lessor resulting from the lessee's failure to pay rent, that is, the parties could not look forward and foresee the amount of loss to the lessor, it is that condition which the parties must be assumed to have had in mind when they stipulated, in terms, for liquidated damages, and the fact, if it be a fact, that after the breach took place and the damage was caused, it was quite possible to point out and estimate the damage resulting from the breach could have had no bearing upon the intention of the parties when the lease was made.

So far as the language of the lease is concerned it could not easily have been made stronger. Not only is it stipulated that the deposit shall be held as liquidated damages to compensate the landlord in the event of a breach by the lessee, but the reason for so stipulating is explicitly given in that "it is impossible to estimate or determine what the damage would be" in case of a breach. These words, or their equivalent, were found in the lease under consideration in *Feyer* v. *Reiss* (154 App. Div. 272), and are cited by the court as serving to establish the intention of the parties that the deposit should be

considered liquidated damages. No similar words appeared in the lease considered in *Feinsot* v. *Burstein* (161 App. Div. 651; 213 N. Y. 703), where there was a simple declaration that in case of default the deposit should be retained as liquidated damages and not as penalty. In that case it was not stated in the lease, nor shown upon the trial, that under the circumstances existing when the lease was made the parties could have anticipated any difficulty in estimating the damages which might flow from a breach.

In the present case the contract between the parties was much more than an ordinary lease. The lessor undertook to purchase a lot of land and construct a large building thereon comprising a theatre capable of seating upwards of 2,000 people, with its equipment, and also an inclosed roof garden with stores, meeting rooms and a ballroom. All this was to be rented by the lessee for a term of ten years, with an option to renew for a further term of eleven years. This required, as the court has found, an initial expenditure of $667,000 by the lessor. The deposited security amounted to one year's rent, or ten per cent of the aggregate rent reserved by the lease, which up to $52,000 was to be appropriated to the payment of the last year's rent providing the lease ran so long, the lessor meanwhile paying interest on the whole sum deposited. I think it is impossible to say that any man could have foreseen, with even approximate exactitude at the time the lease was made, what the probable loss would be to the landlord in case the tenant should default at some time during the next ten years — whether he could or could not get another tenant who would care to use the building for the purpose for which it was expressly built, and if so what rent could be secured — whether if he were obliged to alter it so as to adapt it to other purposes, how much it would cost and what rent could be realized after such alterations and how long the building would have to remain vacant pending the procurement of another tenant or during alterations. All these were matters which might occur in the future, which could not be foreseen and the consequences of which, as bearing upon the lessor's damage could not be estimated in advance.

I think that, for these considerations, the case is brought

directly within the authorities which hold that a stipulation in a lease for liquidated damages in case of default, should be construed and enforced as it is written. And for the same consideration I do not think that in view of the value of the property involved, its peculiar character, and the length of the lease, the amount stipulated for damages was so large as to shock the conscience of the court. Under easily conceivable circumstances the loss to the lessor might readily equal or even exceed the amount retained as security.

There is yet another reason why the complaint was properly dismissed. The sum deposited was in any event to be held as security for the full performance of each and every of the terms of the agreement, one of which was that in case the premises became vacant the landlord might re-enter and lease the property as agent of the tenant, who agreed to remain liable for any deficiency. This condition survived the dispossession, and the action was, therefore, prematurely brought, for the premises became vacant within the meaning of the lease when the tenant was dispossessed. (*Halpern* v. *Manhattan Avenue Theatre Corporation*, 173 App. Div. 610; affd., 220 N. Y. 655.)

The judgment appealed from should be affirmed, with costs.

Judgment reversed, with costs, and judgment ordered for plaintiff as directed in opinion, with costs. Order to be settled on notice.