HILTOP SAND CORPORATION, Respondent, Appellant, *v.* EMMETT B. SIMPSON and Another, Appellants, Respondents.

Second Department, March 15, 1929.

*Joseph F. Kroppy* [*George E. Polhemus* with him on the brief], for the plaintiff.

*Edgar F. Hazleton* [*Robert P. Beyer* with him on the brief], for the defendants.

Amended judgment unanimously affirmed, without costs, upon the opinion of CHARLES H. STREET, referee.

Present — LAZANSKY, P. J., RICH, YOUNG, KAPPER and SEEGER, JJ.

The following is the opinion of the referee:

CHARLES H. STREET, Referee. On May 3, 1923, the plaintiff and the defendant Emmett B. Simpson entered into a written contract under seal, relative to the sale by the plaintiff to said

defendant of sand to be taken from certain premises on Queens boulevard near Forest Hills, L. I., which premises were leased by the plaintiff from the owner of the fee. By said contract the defendant Simpson was required to take from said property all of the sand sold by him in his business for delivery in a certain territory specified in the contract, and to pay for the same at the rate of forty cents per cubic yard, payments to be made on the tenth day of each month for the sand removed during the preceding month. The term of the contract was one year from May 7, 1923, but it contained an option to the defendant to continue the removal of sand from the premises for another year, under the same terms and conditions, which option was exercised by the defendant. Although the contract was originally made between the plaintiff and the defendant Emmett B. Simpson, the defendant Emmett B. Simpson, Inc., seems to have taken over the contract by mutual consent of the parties. The contract also contained a provision giving the plaintiff the right to cancel it after ten days' notice in writing, upon the breach of any of its terms, conditions or stipulations by the defendant.

The defendant removed sand from the premises from some time in the month of May, 1923, to the 19th day of July, 1924, after which no sand was taken. For two or three months, the plaintiff and the defendant employed separate checkers to keep track of the amount removed. Thereafter, upon suggestion of the defendant, a single checker was employed to represent both parties, one-half of his salary being paid by each of the parties. The checker at the end of each month rendered a written statement to the defendant showing the number of cubic yards of sand removed during the month, and at the same time sent a copy of such statement to the plaintiff. The defendant made monthly payments up to the time when it ceased to take sand from the premises, the last payment being made in August, 1924, for the period between July first and July nineteenth. The payments were all made in the same manner. On or about the tenth of each month the defendant sent to the plaintiff a statement showing the number of cubic yards of sand removed during the preceding calendar month, and with each of said statements the defendant also sent to the plaintiff a check for a certain amount. All of said checks were accepted and collected by the plaintiff. It does not appear that the plaintiff in any instance gave a receipt, other than the indorsement of the check.

In no instance was the amount of the check sent to the plaintiff equal to the contract price of the sand removed during the preceding month, as shown by the statement accompanying the check.

A deduction of one per cent from the contract price was made from the checks delivered in June, July and August, 1923. Thereafter a deduction of five cents per cubic yard, plus a further deduction of one or two per cent of the contract price, was made each month. The total number of cubic yards of sand taken by the defendant was 68,430. The amount payable for that number of. cubic yards of sand at the contract rate of forty cents per cubic yard would have been $27,372. The total amount received by plaintiff was $24,378.64, the difference of $2,993.36 being due to the deductions from the monthly payments.

Some letters passed between the plaintiff and the defendant in the month of July, 1923, in reference to the deduction of five cents per yard from the contract price. The defendant in its letters claimed that the plaintiff had agreed to a permanent reduction of the price of the sand from forty cents to thirty-five cents per cubic yard, such reduction to date from July 15, 1923. The plaintiff in its letters admitted that it had agreed to the reduction, but claimed that the same was only for the period from July fifteenth to August first " or further notice." In a letter dated July 28, 1923, Mr. Polhemus, the treasurer of the plaintiff, said " whether or not we shall continue to give you a gratuitous rebate remains to be seen." In another letter dated May 17, 1924, he said, " We can make no further allowance to you than what we are doing at present. You know very well your contract calls for 40c. a yard payable on the 10th of each month without discount. We are now allowing you 5c. a yard and in addition 1%, which is abso- lutely the best we can do." There were also conferences between Mr. Polhemus and the defendant Simpson, but the testimony as to what was said at these conferences is conflicting. The defend- ant, however, continued to make the deduction of five cents per yard and an additional one per cent discount from its monthly checks, and said checks were accepted by the plaintiff.

The defendant took no sand after July 19, 1924. On November 6, 1924, the plaintiff gave the defendant written notice of the can- cellation of the contract. In such notice the plaintiff demanded an accounting of all sand sold by defendant in the contract terri- tory between May 3, 1923, and November 6, 1924, and payment for the same, and also demanded payment of the sum of $2,936.06 " still owing for sand removed and accounted for by you."

Thereafter this suit was commenced.

The complaint contains three causes of action. By the first cause of action the plaintiff seeks to recover the sum of $2,993.36, being the difference between the price of the sand taken by the defendant at the contract rate of forty cents per cubic yard, and the

total amount paid by the defendant. By the second cause of action the plaintiff seeks to recover damages based upon the failure of the defendant to take any sand between July 19, 1924, and November 6, 1924, when the contract was terminated by the notice above mentioned. The third cause of action was withdrawn by plaintiff's the counsel at the close of the trial.

The answer denies the material allegations of the complaint and pleads two defenses: *First*, payment, and *second*, that the sand removed from the plaintiff's premises became of such poor quality that the defendant could not use the same in his business.

While the evidence does not support either of the affirmative defenses pleaded in the answer, I think that it shows a situation which precludes the plaintiff from recovery on its first cause of action. There was undoubtedly an agreement by the plaintiff to accept payment for the sand removed by the defendant at the rate of thirty-five cents per yard, instead of the contract price of forty cents per yard. The letter of July 21, 1923, written by plaintiff's treasurer to the defendant, admits that such agreement was made and that it was to run from July fifteenth to August first, " or further notice," and in his letter of May 17, 1924, to the defendant, the plaintiff's treasurer said, " We are now allowing you 5c. a yard and in addition 1%, which is absolutely the best we can do." The defendant paid for the sand at the reduced rate every month and the plaintiff did not repudiate the agreement or demand payment at the contract rate at any time prior to July 19, 1924, when the defendant ceased to take sand.

The written contract between the parties in this case being under seal, could not be modified by a subsequent *executory* parol agreement. The plaintiff could have repudiated the parol agreement at any time, so far as it remained executory, and could have insisted upon performance according to the terms of the written contract; but so far as the parol agreement was executed, it became binding and the plaintiff cannot now recover the amount deducted from the monthly payments which were made and accepted. (*McKenzie* v. *Harrison*, 120 N. Y. 260; *Mitchell* v. *Dunmore Realty Co.*, 156 App. Div. 117; *Meyers* v. *Knights of Pythias Bronx Temple Assn.*, 194 id. 405; *Zindler* v. *Levitt*, 132 id. 397.)

In *McKenzie* v. *Harrison* (*supra*) the action was brought to recover rent alleged to be unpaid under a lease. It appeared that the parties had executed a lease under seal, whereby the plaintiffs leased certain premises to the defendants for the term of ten years for the annual rental of $4,500 payable quarterly. Upon the trial the defendants offered to prove in substance that after they had occupied the premises for one year under the lease, and paid the

rent in full for that year, they reported to the plaintiffs that their business was very dull, and that they could not afford to pay so much rent; that thereupon the plaintiffs agreed to reduce the rent $1,000 per year, making $3,500 a year or $875 for each quarter; that thereafter the defendants at the end of each quarter paid the plaintiffs $875 and the plaintiffs executed and delivered to them a receipt for that amount in full for balance of rent due at that date as per agreement "until times are better;" that this continued for three years, after which the plaintiffs notified the defendants that thereafter they wished them to pay the amount of rent originally provided for by the lease, and that, thereafter, the full amount of rent was paid until the commencement of the action. This evidence was excluded by the trial court and a verdict directed for the plaintiffs for the full amount claimed. The Court of Appeals held that the trial court erred in excluding the evidence thus offered by the defendants, as the jury might have found from such proof that the plaintiffs gave the defendants the balance of the rent for which the action was brought. The court said: "We shall not question the rule that a contract or covenant under seal cannot be modified by a parol unexecuted contract. (*Coe* v. *Hobby*, 7 Hun, 157; 72 N. Y. 141; *Smith* v. *Kerr*, 33 Hun, 567–571; 108 N. Y. 31.) Neither shall we question the views of the court below to the effect that the alleged oral agreement in this case to reduce the rent $1,000 per year was void and inoperative in so far as it remained unexecuted. The lessors had the right to repudiate it at any time and demand the full amount of rent provided for by the lease; but in so far as the oral agreement had become executed, as to the payments which had fallen due and had been paid and accepted in full as per the oral agreement, we think the rule invoked has no application."

The plaintiff contends that inasmuch as the defendant failed and refused to take any sand after July 19, 1924, the parol agreement for the deductions above mentioned was wholly executory, and consequently ineffectual to modify the written contract. Under the decision in *McKenzie* v. *Harrison* (*supra*) I think that the delivery of the checks by the defendant in this case for each of the monthly installments, and the acceptance thereof by the plaintiff, was an execution of the oral agreement so far as those payments were concerned, and that the plaintiff cannot now reopen the transaction and recover the difference between the contract price and the amounts paid.

Plaintiff's second cause of action is to recover damages for breach of the contract by the defendant in refusing to take any sand from plaintiff's premises during the period between July

19 and November 6, 1924. The evidence shows that during the period mentioned the defendant sold sand in the territory specified in the contract, which sand was taken from premises other than those of the plaintiff. There is no evidence as to the amount of sand so sold by the defendant, excepting that it is conceded to have been less than the amount taken from the plaintiff's premises during the corresponding period in the year 1923. An employee of the defendant Simpson testified that the sales and delivery of sand by defendant in the contract territory were materially reduced after the defendant ceased to take the sand from the plaintiff's premises, and that the reason for such reduction in the volume of sales was that the defendant had no other sand bank nearer than Hollis, and that it could not compete with other dealers in the contract territory by delivering sand from the Hollis bank. The evidence shows that the total cost of the sand to the plaintiff was twenty-five cents per cubic yard. Plaintiff contends that it is entitled to recover, under its second cause of action, the profits which it would have realized had the defendants performed the contract, and that such profits can be estimated upon the basis of the profits made by the plaintiff during the same period in the year 1923. The defendants, on the other hand, contend that the cancellation of the contract by the plaintiff on November 6, 1924, precludes the plaintiff from recovering anything at all. I do not agree with the contention of defendants' counsel on this point. The contract was not canceled by mutual consent. It was canceled by the plaintiff pursuant to the provision therein which authorized such cancellation upon breach of its terms by the defendant. The defendant breached the contract by selling sand in the contract territory after July 19, 1924, which was taken from other premises. The plaintiff was clearly within its rights in terminating the contract, because of this breach by the defendant. The notice of cancellation given to the defendant on November 6, 1924, showed no intention by the plaintiff to waive its claim to damages for breach of the contract. On the contrary, damages were claimed in the notice.

A more difficult question arises as to the measure of damages, but I think that, under the circumstances, the plaintiff is entitled to recover its prospective profits, based upon the number of yards of sand sold during the corresponding period in the year 1923, and that it should not be limited to a recovery based upon the number of yards of sand sold by the defendant in the contract territory between July 19 and November 6, 1924. The contract provided that the defendant should " diligently and properly push the sale of sand from said property." By selling and delivering

sand from other premises during the period in question, the defendant not only violated the contract provision that all sand sold by it in the contract territory should be taken from the plaintiff's property, but also violated the provision requiring it to diligently and properly push the sale of sand from the plaintiff's property. As above stated, the evidence shows that the action of the defendant in selling sand from other premises materially diminished the volume of its sales. As the defendant by its own wrongful conduct diminished the volume of its sales in the contract territory, it would be unfair to limit the plaintiff's damages to the number of yards sold in that territory during the period in question. Plaintiff's right to recover prospective damages estimated in the manner here suggested seems to be supported by the decisions in *Wakeman* v. *Wheeler & Wilson Mfg. Co.* (101 N. Y. 205); *Paduano* v. *State* (203 App. Div. 503); *Henderson Tire & Rubber Co.* v. *Wilson & Son* (235 N. Y. 489); *Plunkett* v. *Comstock, Cheney Co.* (211 App. Div. 737); *Usdansky* v. *Lane* (184 id. 140); *Schile* v. *Brokhahus* (80 N. Y. 614).

The defendant took approximately 21,000 yards of sand from the plaintiff's premises between July 19 and November 6, 1924. At fifteen cents per yard, the amount recoverable by the plaintiff based on the number of yards above mentioned would be $3,150. From this amount, however, should be subtracted $480, the plaintiff's share of the wages of the checker between July 19 and November 6, 1924.

The plaintiff is entitled to judgment on its second cause of action in the sum of $2,670, with interest thereon from November 6, 1924, with costs.

As to the first and third causes of action, the complaint should be dismissed.