FIELDS HOLDING COMPANY, INC., Appellant, *v.* CHANBROOK REALTY COMPANY, INC., Respondent.

First Department, February 7, 1936.

*Jacob J. Podell* of counsel [*Lester Lyons* with him on the brief; *Hays, Podell & Shulman*, attorneys], for the appellant.

*Barnet Kaprow* of counsel [*David L. Weissman* with him on the brief; *Kramer & Kleinfeld*, attorneys], for the respondent.

TOWNLEY, J. Plaintiff leased the Mansfield Theatre from the defendant in September, 1927, for a term end ng April 30, 1947. The lease was subject to the terms and conditions of a major lease between the fee owner and the defendant. To secure the performance of its provisions, plaintiff deposited $50,000 as security with the defendant. Plaintiff was dispossessed on February 25, 1929, because of its failure to pay an installment of rent. After the dispossess defendant relet the premises for the account of the plaintiff. Thereafter an action was brought in the Supreme Court

for an alleged surplus obtained by the defendant on such reletting. That action was dismissed September 10, 1931, on the ground that it was prematurely brought. (*Fields Holding Co., Inc.*, v. *Chanbrook Realty Co., Inc.*, 146 Misc. 306; affd., 235 App. Div. 832; affd., 261 N. Y. 510).

On December 11, 1931, the defendant was dispossessed after a summary proceeding in the Municipal Court by the owner of the fee. On October 19, 1932, the owner of the fee was foreclosed of all interest in the property by a sale in a foreclosure proceeding pursuant to an order of the Supreme Court. The mortgage was senior to the defendant's lease and by the sale defendant lost all right and interest in the premises.

After setting out these facts, the allegations in the complaint are that the sums received by the defendant on reletting were substantially in excess of the rent due under the lease, that there has been no damage suffered by reason of any breach by the plaintiff of any of the provisions of the lease, and that the plaintiff is now entitled to the return of the $50,000 deposit.

The second cause of action demands the surplus of rent which was originally demanded in the prior action.

The pertinent provisions in the security clause are that the security is deposited " for the full and faithful performance of the terms and conditions of this lease by the lessee," that the security " is to remain in the possession of the lessor until the end of the term or any renewal or renewals thereof (unless applied prior thereto to make good any default on the part of the lessee) and then be returned to the lessee if all of the said terms, covenants and conditions have been fully complied with;" if the tenant is dispossessed from or if he vacates or abandons the premises, or if the lease is ended on condition broken, then the landlord may, at its option, at any time " use and apply the said sum so far as it will apply towards the payment of the rents reserved and any other sums by the tenant agreed to be paid and to the performance of the covenants and agreements therein contained to be kept, performed or fulfilled by the tenant and towards payments to be made by the tenant after entry, re-entry or re-possession of the premises by the landlord, or termination of said lease as therein provided; " and finally, there is a provision whereby the tenant agrees " that no action nor proceedings of any kind may nor shall be instituted, begun or carried on by the tenant or by any one claiming under or through the tenant in relation to said moneys so deposited or any part thereof until one month after the expiration of the full term of said lease as originally made and any renewal or renewals thereof  *  *  *  and if there be any surplus after

making and applying the payments therein provided for, such surplus, if any, shall one month after the expiration by limitation of the original full term thereof and any renewal or renewals thereof be turned over by the landlord to the tenant. * * * Should this lease come to an end before the natural termination thereof, as herein expressed, viz., prior to April 30th, 1947, or any renewal or renewals thereof for any reason whatsoever not due to the fault of the lessee then and in that event, there shall forthwith be returned to the lessee said sum of Fifty thousand ($50,000) Dollars or so much thereof as lessee shall be entitled to receive, together with interest at the rate of four (4%) per cent per annum, from the date of deposit thereof." There is a provision permitting the commingling of the security money with the general business funds of the defendant. There is also a clause that as long as the lessee is not in default, the lessee has a lien on the property for the amount of the security with all the remedies of a mortgagee. A further clause provides that in the event of a *bona fide* sale subject to this lease or an assignment of the major lease, the lessor or its assigns shall transfer the security to the vendee as assignee for the benefit of the lessee and that the lessor shall thereby be released from liability for the return of the security.

The relation in which the security is to be held is a matter of agreement between the parties. (*Mendelson-Silverman, Inc.*, v. *Malco Trading Corp.*, 146 Misc. 215; affd., 238 App. Div. 852.) The intent of the parties must govern and is to be gathered from the language used, the surrounding circumstances, the situation of the parties and the subject-matter of the contract viewed in the light of the evidence. (*Levinson* v. *Shapiro*, 238 App. Div. 158; affd., 263 N. Y. 591.) The former landlord-defendant claims that the obvious intent to be deduced from the foregoing cited clauses is that the landlord was under any and all circumstances to keep whatever security was left in his hands and to be free from any suit until 1947. The plaintiff on the other hand takes the position that upon the defendant's loss of all interest and right in the leased premises the mutual obligations of the plaintiff and defendant under the lease became final and conclusively fixed, that any need for further retention by defendant of the security deposited with it ceased, and that plaintiff's right to recover such security accrued.

It must be remembered that this defendant was itself a lessee and that in the instant lease the defendant undertook and agreed " to perform and comply with all the terms and conditions of the said major lease particularly with respect to the payment of rent and all other obligations under the said major lease which the

tenant thereunder is required to perform independent of the obligations of the lessee hereunder." In spite of this covenant, after plaintiff was dispossessed, the defendant defaulted in its payments under the major lease and subsequently was a party to the foreclosure proceeding under which the premises were sold.

After the foreclosure sale the defendant certainly had no further interest in the premises. (*Metropolitan Life Insurance Co.* v. *Childs Co.*, 230 N. Y. 285.) It was said in *Stewart* v. *Briggs* (138 App. Div. 701) that the loss of interest by the landlord may be availed of by the tenant and the tenant " may show that the interest of his landlord has expired since the making of the lease, or that he has sold and conveyed the land, or that he has been evicted by paramount title, or that the land has been taken from him by paramount right."

The defendant does not seriously contest the law as just described but claims that the provision against bringing a suit makes the instant lease different from all other leases which have been adjudicated.

The prohibition against bringing a suit until thirty days after the expiration or termination of the lease was held no bar to a recovery by the tenant in *Seletzsky* v. *James* (69 Misc. 612). Thereafter the Appellate Term again had occasion to pass on a case (*Feinsot* v. *Burstein*, 82 Misc. 429) involving a lease providing for the return of security amounting to $2,000 " upon the termination of this lease at the end of the term aforesaid " — referring to the full term thereof. In that case the relation of landlord and tenant had been terminated by summary proceedings as here, but defendant had not been himself evicted. The court (BIJUR, J., writing) said: " It seems to me that a fair construction of the lease limits the application of the clause referred to, to the case where the plaintiff remains undisturbed in possession of the premises until the end of the term, and was not intended to limit the rights of the plaintiffs in a contingency such as the one that happened. Indeed, since the lease terminated upon the final order in the dispossess proceedings, the contractual relations of the parties ended under the very terms of this lease, and the $2,000 is held by the defendant upon no condition whatsoever except as security for so much of the rent as was then unpaid. (See *Caesar* v. *Rubinson*, 174 N. Y. 492, 498; *Michaels* v. *Fishel*, 169 id. 381, 391.) " That decision was affirmed by this court (161 App. Div. 651) and by the Court of Appeals (213 N. Y. 703).

The cases are numerous in this State which have held that when the possibility of claims against the security has ceased, the former tenant may require the return of the security. (*Kottler* v. *New*

*York Bargain House, Inc.*, 242 N. Y. 28; *Seidlitz* v. *Auerbach*, 230 id. 167; *Degnario* v. *Sire*, 34 Misc. 163; *Halpern* v. *Manhattan Avenue Theatre Corp.*, 173 App. Div. 610; affd., 220 N. Y. 655; *Lenco, Inc.*, v. *Hirschfeld*, 247 id. 44.)

The clauses of the present lease read as a whole make it certain that the deposit is not to be retained as a penalty. They also show that plaintiff did not intend to make a four per cent investment until 1947 with the defendant. The need for the retention of the deposit as security has disappeared. The clause prohibiting suit until one month after the expiration of the term was intended merely to protect the landlord against demand for the return of the deposit until he had an opportunity to ascertain and determine the amount of his damages. It manifestly has no connection with the situation in which the landlord can make no further claims against the security. The first cause of action was, therefore, improperly dismissed.

The second cause of action is based upon the allegation that the defendant re-entered and exercised its option to relet after the dispossess as the agent of the plaintiff in accordance with paragraph third of the lease. Paragraph third provides in part that " the lessor shall have and is hereby given the right to re-enter the said premises and to recover the same and to obtain possession thereof immediately by summary proceedings * * * as if after the expiration of said lessee's term or for default in the payment of rent as the case may be, * * * but the lessee shall nevertheless remain liable on all the terms and covenants of this lease as herein provided. * * * If the demised premises or any part thereof shall become vacant or be abandoned during the said term, or if the lease or term thereof be terminated prior to the expiration date for any reason as in this lease provided, the landlord, or its representatives, may re-enter and resume possession of the same, by summary proceedings, force, or otherwise * * * and may, at its option relet the same premises as the agent of the said tenant but in the name of the said landlord, * * * the remainder [of the rent], if any, to be paid over to the tenant, who shall be liable for any deficiency." There is a definite allegation in the second cause of action that the defendant exercised its option to relet, that a surplus of $250,000 resulted, and that the sum is presently due.

The previous litigation concerning this lease, referred to above, resulted in a decision that an action for surplus rent prior to the expiration date named in the lease was premature. The learned justice at Special Term in his opinion, however, construed the clauses of the lease as entitling the tenant to be paid such surplus

as might result at the end of the entire lease. That construction without doubt expressed the intention of the parties. Since that decision was made all relation between the parties had been terminated by the decree in the foreclosure action. Plaintiff is entitled to recover such sums as are established to be surplus after trial.

The previous decision was in no sense a final adjudication that a suit could not be brought until 1947. The circumstances have completely changed and plaintiff is entitled to show the additional facts. (*Richard* v. *American Union Bank*, 253 N. Y. 166.) In any event, as already stated, the prior adjudication held nothing more than that *at that time* the suit was prematurely brought. We hold that at the present time, in view of the changed circumstances, the second cause of action is timely brought.

The judgment and order so far as appealed from should be reversed, with costs, and the motion denied, with ten dollars costs, with leave to the defendant to answer within twenty days after service of order with notice of entry, upon payment of said costs.

MARTIN, P. J., McAVOY, O'MALLEY and GLENNON, JJ., concur.

Judgment and order so far as appealed from reversed, with costs, and the motion denied, with ten dollars costs, with leave to the defendant to answer within twenty days after service of order upon payment of said costs.