GABRIEL POLLACK, Plaintiff, *v.* FRANK BRIGUGLIO and Another, Defendants.

City Court of New York, New York County, June 28, 1937.

*Arthur G. Warner,* for the plaintiff.

*Charles Diringer,* for the defendants.

LIVOTI, J.   On May 1, 1928, a lease for a term of twelve years was entered into between Frank Briguglio, as landlord, and Sol Levine and others, doing business under the trade name of Hillside Club Service, as tenants.   The premises, located at No. 135-14 Hillside avenue, at the corner of Kew Gardens road, in the borough of Queens, city of New York, were let as and for a gasoline station.

On October 31, 1928, Frank Briguglio conveyed the fee to the codefendant Yukon Realty Company, Inc., of which he was president, subject to the lease of May 1, 1928, and assignments thereof, and transferred the security thereunder.   The lease, *inter alia,* provided that Frank Briguglio was not to be released from liability on the transfer by him of the security deposited.

The plaintiff Gabriel Pollack, on October 1, 1931, became the tenant under an assignment.

It was testified to by Gabriel Pollack on the trial without a jury that bad business conditions prompted him to request a reduction

in the rental. Under the terms of the lease the rent was to be $350 per month. The landlord, over a period of more than three years, accepted amounts less than that provided for in the lease.

In October of 1936 the Yukon Realty Company, Inc., commenced summary proceedings against the original tenants and recovered a judgment of $475, representing an unpaid balance of $125 for the month of September, 1936, and the full amount of rent as reserved under the lease, namely, $350, for the month of October, 1936. In this summary proceeding the tenants interposed the defense of a modification agreement. The landlord agreed that there was a modification, but that the reductions in rent were to be deducted from the security deposit of $2,500. The said security deposit was provided for in the lease for the full and faithful performance of the terms thereof, and said sum was to be returned to the tenants at the expiration of the term, which was May, 1940.

On the entry of the final order of dispossession in October, 1936, the Yukon Realty Company, Inc., took over the premises and delivered possession to the Elyte Super Service Auto Corporation. The following month the Yukon Realty Company, Inc., by deed transferred the fee to the Elyte Super Service Auto Corporation.

This action against Frank Briguglio and the Yukon Realty Company, Inc., his grantee, is for the return of $2,500, which is the amount deposited as security under the lease.

For the purpose of the trial it was stipulated that the sum of $2,500 was deposited with Frank Briguglio as security, and that Frank Briguglio duly transferred the said security under said lease to the defendant Yukon Realty Company, Inc.

The answer denies that the $2,500 is due and owing, and sets up four separate and distinct defenses. The first is that the action was brought prematurely, the date of the expiration of the lease being May 13, 1940. The answer sets forth part of the lease which is alleged to be pertinent and which follows: " And it is agreed that if the said premises or any part thereof shall become vacant during said term or should the tenants be evicted by summary proceedings or otherwise, the landlord or his representative may re-enter the same by force or otherwise, without being liable to prosecution therefor, and the tenants shall pay at the same time as the rent is payable under the terms hereof, a sum equivalent to the rent reserved herein, and the landlord may relet said premises on behalf of the tenants, applying any moneys collected first to the expense of resuming or obtaining possession and then to the payment of the rent and all other charges due the landlord, any surplus to be paid to the tenant who shall remain liable for any deficiency."

Paragraph 3 of the lease, which also applies, follows: " The ten-

ants have this day deposited with the landlord the sum of Twenty-five Hundred ($2,500) Dollars as security for the full and faithful performance by the tenants of all the terms, covenants and conditions upon the tenants' part to be performed, which said sum shall be paid to the tenants after the time fixed as the expiration of the term herein, provided the tenants have fully and faithfully carried out all of the terms, covenants and conditions on their part to be performed."

The second defense is that there was no proper notice of the assignment of the lease and of the security deposit. The answer sets forth paragraph 23 of the lease, which follows: " The tenants shall have the right to assign this lease and their interest in the security deposited as hereinbefore mentioned, provided that the tenants shall notify the landlord of the name and address of such assignee by registered mail, at the time of such assignment." It is conceded that there was no notice by registered mail.

The third defense is that of *res adjudicata*. In the summary proceeding for the September and October, 1936, rent, the original tenants were permitted to amend their answer so as to plead modification of the lease as to the rental. The defendant Yukon Realty Company, Inc., the petitioner-landlord in that proceeding, contended that the reductions accepted were to be deducted from the security deposit.

It is urged that this modification is the subject of the present complaint; that the judgment in the Municipal Court was rendered in favor of the Yukon Realty Company, Inc., upon the merits against the tenants under whom Gabriel Pollack claims privity and the said judgment is a bar to the maintenance of this action.

The fourth defense is that there was a modification of the lease in that the rent payable thereunder was to be reduced and that such reductions allowed to the tenant were to be deducted from the $2,500 deposited.

It is alleged that from May, 1933, to October, 1936, the amount of the reductions totaled the sum of exactly $2,500, excluding the $475 judgment for rent for the months of September and October, 1936.

The claim that this action is premature is without foundation. In October, 1936, the tenant was dispossessed. The next month the Yukon Realty Company, Inc., transferred the fee to the Elyte Super Service Auto Corporation. From that time on there was no relationship of landlord and tenant as between the parties in this action. Ordinarily, had there been no transfer of the fee, this defense could have been effectively interposed. The ownership of the premises having been conveyed, however, all privity of estate between the lessor and lessee ended.

The court in the case of *Seidlitz* v. *Auerbach* ([1920] 230 N. Y. 167, at p. 175) held: " Notwithstanding the dispossession of the tenant under the agreement she remained liable for the whole term of the lease for the amount of the rents she had agreed to pay less the avails of any reletting. But when the landlords transferred their reversion to Stern, all privity of estate between them and the lessee was ended and their rights to enforce agreements on the part of the lessee not broken at the time ceased. No longer might the landlords hold her liable for deficiency between agreed rentals thereafter accruing and the amount obtained on reletting. All damages to which they were entitled were damages for breaches of the agreement already accrued. Such damages were caused by the nonpayment of rent on March first and April first. We know of no principle by which when on March first that sum was not paid the landlords might recover not only it but ending the relationship by evicting the tenant might recover a substantial sum in addition for the loss of their bargain."

Again, in the case of *Fields Holding Co., Inc.,* v. *Chanbrook Realty Co., Inc.* ([1936] 246 App. Div. 241, at p. 244), the court, enunciating the same principle of law, said: " The former landlord-defendant claims that the obvious intent to be deduced from the foregoing cited clauses is that the landlord was under any and all circumstances to keep whatever security was left in his hands and to be free from any suit until 1947. The plaintiff, on the other hand, takes the position that upon the defendant's loss of all interest and right in the leased premises the mutual obligations of the plaintiff and defendant under the lease became final and conclusively fixed, that any need for further retention by defendant of the security deposited with it ceased, and that plaintiff's right to recover such security accrued." Continuing (246 App. Div. 241, at p. 245), the court said: " After the foreclosure sale the defendant certainly had no further interest in the premises. (*Metropolitan Life Ins. Co.* v. *Childs Co.*, 230 N. Y. 285.) It was said in *Stewart* v. *Briggs* (138 App. Div. 701) that the loss of interest by the landlord may be availed of by the tenant and the tenant ' may show that the interest of his landlord has expired since the making of the lease, or that he has sold and conveyed the land, or that he has been evicted by paramount title, or that the land has been taken from him by paramount right.' " And, again, on the same page the court said: " The cases are numerous in this State which have held that when the possibility of claims against the security has ceased, the former tenant may require the return of the security." (*Kottler* v. *New York Bargain House, Inc.*, 242 N. Y. 28; *Seidlitz* v. *Auerbach*, 230 id. 167; *Degnario* v. *Sire*, 34 Misc. 163; *Halpern* v. *Man-*

*hattan Ave. Theatre Corp.*, 173 App. Div. 610; affd., 220 N. Y. 655; *Lenco, Inc.*, v. *Hirschfeld*, 247 id. 44.)

The contention of lack of proper notice of the assignment to Gabriel Pollack is untenable. The evident purpose of the provision in the lease (paragraph 23) that " The tenants shall notify the landlord of the name and address of such assignee by registered mail, at the time of such assignment," is to protect the landlord against the payment of the security deposit to the wrong tenant. The landlord in no way stands to be prejudiced. This provision in any event was waived when Frank Briguglio, as landlord, discussed the question of reduced rentals and accepted them of the tenant as early as 1933.

The defense of *res adjudicata* is equally without merit. The defense of modification of the agreement was interposed in the Municipal Court. In this summary proceeding it was held that the tenants were liable for the full amount under the lease at the rate of $350 per month. Judgment was awarded for $475, $125 as balance for the September rent and $350 as the October rent. The court evidently took cognizance of a modification agreement, but regarded it as not binding as to the unpaid balance of $125 for the September rent and as to the entire month's rent of $350 for October, there being no consideration for such an agreement.

In the present case both sides agreed that there was a modification, but disagreed as to the nature and effect of it. The defense of *res adjudicata* is available when the judgment is obtained in a case as between the same parties or their privies and when it involves the same subject-matter. The Municipal Court action was brought by the landlord for rent while the one at bar is brought by the tenant for the return of the security deposit. There is no inconsistency in these claims. In this connection part of the holding in the case of *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.* (250 N. Y. 304, at pp. 306 and 308) is herein set forth: " A judgment in one action is conclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first. * * * It is not conclusive, however, to the same extent when the two causes of action are different, not in form only * * * but in the rights and interests affected. The estoppel is limited in such circumstances to the point actually determined. * . * * The decisive test is this, whether the substance of the rights or interests established in the first action will be destroyed or impaired by the prosecution of the second." The principle of law enunciated in the *Schuylkill* case is followed in *Donahue* v. *New York Life Ins. Co.* (259 N. Y. 98).

Having overcome in my mind the questions of law raised by the first three defenses I come to the fourth defense, which raises a sharp question of fact. The plaintiff stated that the reductions of rent were pure gifts granted because of bad business conditions, while the defendants contended that the reductions were to be deducted from the security deposited. Executed agreements for reduction of rent are binding and enforcible. All reductions in question are concededly executed agreements. (*McKenzie* v. *Harrison*, 120 N. Y. 260; *Cammack* v. *Slattery & Bro., Inc.*, 241 id. 39, 45.) In the case of *Hilltop Sand Corp.* v. *Simpson* (225 App. Div. 467, at p. 471) the court said: " The written contract between the parties in this case being under seal, could not be modified by a subsequent executory parol agreement. The plaintiff could have repudiated the parol agreement at any time, so far as it remained executory, and could have insisted upon performance according to the terms of the written contract; but so far as the parol agreement was executed, it became binding and the plaintiff cannot now recover the amount deducted from the monthly payments which were made and accepted."

I find as a fact that Frank Briguglio agreed to accept $50 a month less in rent from the early part of 1933 to December of 1934, and then a reduction of $75 a month rent from December, 1934, to September, 1936. Having been executed, the agreements are binding and enforcible. The offer and acceptance of each month's rent constituted a separate transaction. The acceptance of one month's rent at a reduction in no way affected the following month's rent. The landlord, therefore, could at any time have demanded and would have been entitled to receive the full month's rent at $350, which was done in October and November of 1934 when the plaintiff paid $700 as rent for those two months.

Inasmuch as the defendants seek to change the lease in question by establishing an oral modification of it, the burden of establishing that oral agreement is upon them. I find as a fact that they have not established it by a fair preponderance of the evidence. The defendants in my opinion kept no accurate records of the deductions. I find that reductions were allowed even prior to May, 1933, and evidence that the reductions totaled exactly $2,500 is insufficient. The oral testimony of Frank Briguglio on that question was not corroborated by the bank statements and vouchers in that several payments made by the lessee were not included in the prepared statement that Frank Briguglio used while on the witness stand. I am of the opinion that the rent was reduced because business conditions were bad, and there was no understanding that the reductions in rent were to be deducted from the security deposited.

The lease was entered into before the depression. I believe under those circumstances the reductions were made for the purpose of keeping a tenant in the premises.

I, therefore, direct that judgment be entered herein in favor of the plaintiff and against the defendants in the sum of $2,500 as demanded in the complaint.