**BRADFORD HOTEL OPERATING CO.,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

No. 5179.

United States Court of Appeals
First Circuit.

May 27, 1957.

Hartigan, Circuit Judge, dissented.

Phillip J. Nexon, Boston, Mass., with whom Thomas Kaplan, David H. Greenberg and Goulston & Storrs, Boston, Mass., were on brief, for petitioner.

Morton K. Rothschild, Attorney, Department of Justice, Washington, D. C., with whom Charles K. Rice, Asst. Atty. Gen., and Robert N. Anderson, Attorney, Department of Justice, Washington, D. C., were on brief, for respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is a petition brought by Bradford Hotel Operating Co. for review of a decision of the Tax Court of the United States, entered July 30, 1956, determining deficiencies in its income tax for the fiscal years ending August 31, 1948 and August 31, 1949.

Petitioner, Bradford Hotel Operating Co., under an indenture of lease dated December 20, 1946, leased to Blossom Operating Co. Inc., hereinafter referred to as Blossom, a certain parcel of real

estate, together with a building (known as the Hotel Bradford), equipment, furniture and fixtures located thereon, all situate in Boston, Massachusetts. The term of the lease was thirty-five years, commencing on January 1, 1947 and ending on January 1, 1982, "unless sooner terminated" under the provisions of the lease.

By the terms of the lease, as amended by an agreement dated January 16, 1947, Blossom agreed to deposit $250,000 with petitioner, to be held by petitioner "as security for the faithful performance of all of the covenants, conditions and agreements in this lease set forth and contained on the part of [Blossom] to be fulfilled, kept, observed and performed. * * * It is hereby understood and agreed that [petitioner] shall always have the right to apply said deposit or the part or portion thereof not previously applied, or from time to time, such one or more parts or portions thereof to the curing of any default that may then exist, without prejudice to any other remedy or remedies which [petitioner] may have on account thereof."

The lease further provided that petitioner was under no obligation to pay any interest on the deposit, was entitled to mingle the deposit with its own funds throughout the term of the lease and could use the funds as it desired. However, petitioner was obligated to return the deposit to Blossom "immediately upon the expiration of this lease" (or any extension or renewal thereof) provided that Blossom had fulfilled all of its obligations under the lease.

On or about January 1, 1947 Blossom entered into possession of the leased property and by January 16, 1947 Blossom had deposited with Bradford a total of $250,000 pursuant to its obligations under the terms of the aforementioned lease, as amended.

Under an agreement dated September 14, 1949 petitioner and Blossom agreed to a premature termination of "all * * * rights and obligations of the parties" under the lease, as of January 3, 1950, provided Blossom fulfilled certain conditions prior to the effective date of surrender. Clause 6 of this agreement provides as follows:

"In accordance with the terms of said lease, as amended by said indenture dated January 16, 1947, the Tenant deposited with the Landlord the sum of Two hundred fifty thousand dollars ($250,000) as security for the faithful performance by it of all covenants, conditions and agreements in said lease set forth and contained, on the part of the Tenant to be fulfilled, kept, observed and performed. With respect to said deposit, the Tenant releases and discharges the Landlord of and from the obligation to repay or return to the Tenant a portion thereof, viz., One hundred eighty-five thousand dollars ($185,-000), and the Landlord agrees to repay or return to the Tenant the balance thereof, viz., Sixty-five thousand dollars ($65,000) as provided in paragraph 7 hereof."

Pursuant to the undertakings contained in this agreement, Blossom delivered up possession of the premises on January 3, 1950 to petitioner and the lease was surrendered as of that date.

Petitioner reflected the above transaction in its tax return for its fiscal year ending August 31, 1950 by reporting as taxable income the value in 1950 of the sum of $185,000 due to be paid in 1982, computed in accordance with the instructions and tables appearing in the regulations. (U.S.Treas.Reg. 108, § 86.19). The dollar amount of income so reported was $52,735.73. As a result the petitioner claimed a net operating loss for its fiscal year ending August 31, 1950 which it claimed gave rise to a net operating loss deduction for its fiscal years ending August 31, 1948 and August 31, 1949, respectively.

The respondent, however, pursuant to § 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a), determined that, as a result of the September 14, 1949 agreement, the petitioner received taxable income in the amount of $185,000.

As a consequence of this determination, the respondent further determined that the petitioner had no net operating loss in fiscal 1950 which it could carry back to 1948 and 1949, but, on the contrary, that the petitioner had taxable income in 1950. Accordingly, respondent determined a deficiency in income tax for petitioner's fiscal year 1950, and because, prior to the time of respondent's determination, refunds had been made to the petitioner for its fiscal years 1948 and 1949, reflecting the claimed net operating loss arising in petitioner's fiscal year 1950, respondent also determined deficiencies in income tax for petitioner's fiscal years 1948 and 1949.[1]

The petitioner duly petitioned the Tax Court for a redetermination of the deficiencies found by the respondent. The sole question before the Tax Court, and presently before us, was whether petitioner in 1950 received $185,000 as taxable income, or only the present value in 1950 of $185,000 due in 1982.

It seems to me that this depends upon whether the petitioner was obliged to return the deposit of $250,000 in 1950 when the lease was terminated, or in 1982 when the original lease would have expired. For, if Blossom could have required the return of the $250,000 deposit upon termination by mutual consent in 1950, then there would be no doubt that the entire sum of $185,000, which it was agreed petitioner did not have to repay, would constitute taxable income in 1950 to petitioner, as a discharge of a present obligation to repay the deposit in 1950.

The Tax Court, declaring that "[i]t is the well-established rule of landlord and tenant law that a deposit made by the tenant as security for promised performance of the covenants of a lease can be retained by the landlord only as long as the relationship of landlord and tenant continues," held, one member dissenting, that upon termination of the lease petitioner had a present obligation to repay the deposit and therefore realized income to the extent of the $185,000 of the deposit it was allowed to retain.

Petitioner, however, urges here, as it did before the Tax Court, that the 1950 termination agreement released it of a non-interest bearing future obligation to repay the deposit in 1982 and therefore as a result of that transaction it was in receipt of taxable income only to the extent of the present value of the sum of $185,000.

Although I believe that the decision of the Tax Court is correct, I would restrict to some extent the language of the Tax Court's opinion as it might pertain to future cases. In doing so, this court is free to look beyond the law of Massachusetts, since a national scheme is desirable in the determination of tax questions.

The relation in which the security is to be held is a matter of agreement between the parties. Fields Holding Co. v. Chanbrook Realty Co., 1936, 246 App.Div. 241, 285 N.Y.S. 182. Accordingly, the intent of the parties, as gathered from the language employed in the lease agreement, must be given great weight in determining the nature of this relation. See Connecticut Land & Mortgage Co. v. Lesser, 1950, 136 Conn. 580, 72 A.2d 805.

In the instant case it is abundantly clear from the terms of the lease that the parties intended the deposit to be held only as security for the faithful performance of all of the covenants by the lessee, Blossom. "Where such a deposit is made by a tenant for security, the lessor's right of retention exists as long as the relation of landlord and tenant continues and until the termination of such relation and consequent cessation of the

1. It appears that petitioner in no event has any liability for income tax for its fiscal year 1950 because, even if petitioner was wrong in its treatment of the transaction in issue, it has a net operating loss deduction available by virtue of losses incurred in its fical year ending August 31, 1951 sufficient to offset the total taxable income which petitioner might be held to have received in fiscal 1950. Therefore, in substance, the decision in this case will relate only to the deficiencies determined for 1948 and 1949.

liabilities which the deposit was intended to secure, at which time the landlord is bound to return the deposit or security, or account therefor." Thibault v. Frechette, 1948, 135 Conn. 170, 175, 62 A.2d 863, 865. See also Connecticut Land & Mortgage Co. v. Lesser, supra; Vailsburg Amusement Co. v. Criterion Inv. Co., 1931, 156 A. 114, 9 N.J.Misc. 951; 1 Underhill, Landlord & Tenant § 370 (1909).

Applying this principle to the case at hand, as did the Tax Court, it would seem that once the relation of landlord and tenant was terminated by the agreement of September 14, 1949 there existed no further liabilities which the deposit was intended to secure and therefore the petitioner was obliged to return the entire deposit to Blossom at that time.[2] If the petitioner had returned to Blossom the deposit of $250,000 when possession of the premises was surrendered by Blossom in January 1950 and Blossom had immediately paid petitioner $185,000 in cash as consideration for the termination of the lease, there would be no doubt that the entire sum of $185,000 would constitute income to the taxpayer in 1950. Hort v. Commissioner, 1941, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168. In substance the transaction in the present case does not differ materially from the situation in the Hort case.

The petitioner, however, seems to argue that the provision in the instant lease which states that the deposit was to be returned "immediately upon the expiration of this lease" takes this case out of the confines of the general rule discussed above. In this connection, it claims that the word "expiration" does not mean "termination" and hence asserts that it had a right under the lease to retain the deposit until 1982 notwithstanding an earlier termination of said lease. Thus it concludes that by the termination agreement it was merely relieved of a future non-interest bearing obligation to repay $185,000 in 1982.

I believe that, where, as in this case, a deposit is retained by the lessor as security for the faithful performance of covenants, termination by mutual consent constitutes "expiration of the lease" within the meaning of those words so as to divest the lessor of any right in the deposit upon such termination. Cf. Sutton v. Goodman, 1937, 194 Mass. 389, 80 N.E. 608.[3] If the parties intended to agree that the deposit should be retained by the lessor *until the expiration of the term of the lease notwithstanding that the lease might be sooner terminated,* they could have done so by the use of words to that effect. Such apt words were used in two non-tax cases dealing with lease prob-

2. The cases cited by petitioner as standing for the proposition that it had a right to keep the deposit until 1982 despite earlier termination, e. g. Partington v. Miller, 1939, 122 N.J.L. 388, 5 A.2d 468 and Mauro v. Alvino, 1915, 90 Misc. 328, 152 N.Y.S. 963, deal with the problem of whether the obligation to return the deposit for security runs with the reversion where the lessor either loses his interest in the premises by foreclosure or transfer, and are not applicable to the situation before us. Those cases seem to hold, either under the pledge theory or the personal covenant theory, that a lessee who sues his original lessor before the lease has expired cannot recover the deposit even though the original lessor no longer has an interest in the leased premises. The reasons for the holdings, which I do not pass judgment on, are (1) the time, expiration of the lease, has not yet arrived at which the original lessor agreed to return the deposit and (2) the

original lessor and his successor or grantee acting together are still in a position, since the lessee continues to hold the premises under the lease, to obtain a benefit from holding the deposit in accordance with the terms upon which it was made. The instant case concerns a totally different situation. Here we have more than a mere change in relationship of the parties under the lease; rather, the entire lease agreement is terminated. And once the lease ended by termination and Blossom surrendered the premises, the reason for petitioner's retention of the deposit, as security for the faithful performance of covenants, no longer existed.

3. But cf. Farnum v. Platt, 1829, 8 Pick. 339, 25 Mass. 339, where the court drew a distinction between "expiration" and "termination" as it pertained to a party's right to take stones from a quarry under a lease agreement.

880

lems: Richman v. Joray Corp., 4 Cir., 1950, 183 F.2d 667 and Burnstine v. Margulies, 1952, 18 N.J.Super. 259, 87 A.2d 37. By a fair reading of the covenant in the instant case, I believe the parties did not contemplate that the deposit should be retained after the need for security had ended. Cf. Kottler v. New York Bargain House, 1926, 242 N.Y. 28, 150 N.E. 591.

Therefore, again, I believe that petitioner received in 1950 $185,000 of taxable income, for upon termination of the lease and surrender of the premises Blossom could have "immediately" required the return of the deposit. Under such circumstances the $185,000 retained by petitioner could only have been consideration for the termination of the lease, as was the situation in the Hort case, and not a release of an obligation payable at a future date.

Petitioner presses upon us the case of Warren Service Corp. v. Commissioner of Internal Rev., 2 Cir., 1940, 110 F.2d 723, 724, which the Tax Court refused to follow. There, a long term lease, which was to have run from 1926 to 1941, provided that the lessee should pay to the lessor "$125,000, as security for the lessee's performance of its obligations, and that the lessor should have unrestricted use of the said sum and should repay it when the lease expired on August 1, 1941, if the lessee had faithfully performed its obligations." It was agreed by the parties that the lease was to be canceled in 1933 and that the lessee was to give up its right to the return of the $125,000 security deposit. On these facts the Second Circuit held that all the lessor received as taxable income in 1933 was $85,910.65, the present value in 1933 of the lessor's released obligation to pay $125,000 to the lessee on August 1, 1941.

Admittedly, the Warren Service case is strikingly similar to the instant one.

Yet, for reasons discussed below, I am constrained not to follow it here on the question in issue.

First, it is worthy of note, I believe, that the court in that case in deciding the question of tax liability did not consider in any way the nature of the lessor's right of retention of the deposit beyond termination, under principles of landlord-tenant law applicable to the terms of the lease. I, however, take these principles, discussed above, to be determinative of the issue of petitioner's tax liability. That is, I believe the tax treatment to be accorded the receipt of $185,000 here must conform to the rights of petitioner to that sum, under the terms of the lease agreement, as dictated by applicable principles of property law.

But, notwithstanding this basic difference in approach, it is significant that the provision in the Warren Service lease stated that the deposit was to be retained until "the lease expired on August 1, 1941." (Emphasis added.) The court might have assumed that this provision created a right in the lessor to retain the deposit until that date irrespective of earlier termination.[4] I have concluded that the provision in the instant lease, stating that the deposit was to be returned "immediately upon expiration of the lease," does not lend itself to such construction.

Having concluded under the terms of the lease that petitioner by the termination agreement of September 14, 1949 was released of a present obligation to pay $185,000 in 1950 and therefore received the full sum as income in that year, I do not believe that cases, such as Commissioner of Internal Revenue v. Kellogg, 9 Cir., 1941, 119 F.2d 115, involving the cancellation of debts or obligations not payable until a certain date in the future are applicable.

4. It should not be overlooked that the Second Circuit in the Warren Service case had a lessor who, under the terms of the lease, acquired real estate and erected thereon a building of specialized design to fit the purposes of the lessee. Apparently relying on a long term lease the lessor invested approximately $1,100,000 in this way. In such a setting the express provision that the deposit was to be retained until "the lease expired on August 1, 1941" might have been given great weight.

Finally, I mention briefly the theory of the dissenting judge in the Tax Court which the petitioner has adopted in its brief. The gist of this argument seems to be that petitioner prior to the termination agreement had a right to retain the entire deposit, without interest, until 1982. And if the termination agreement had remained silent as to the deposit petitioner would concede that the obligation to repay in 1982 would have been converted into a present obligation to repay in 1950. But, petitioner argues, since the termination agreement provided that its obligation to repay $185,000 was discharged, it cannot be considered to have allowed its right to be converted into a present obligation.

I cannot accept this argument, for I believe, as discussed above, that under the terms of this lease petitioner did not at any time have an exclusive right, apart from the entire lease agreement, to retain the deposit until 1982. It merely had a right to enforce the entire lease agreement until that date, and as long as it enforced it petitioner could retain the deposit. But once it agreed to terminate it lost this right of retention, as it lost its right to enforce every other covenant in the lease, notwithstanding that in the termination agreement it provided that its obligation to repay the security deposit was partially discharged. Petitioner could claim the right to retain the deposit until 1982, irrespective of earlier termination, only if the original agreement had given it this right in specific terms.

For the foregoing reasons I would affirm the decision of the Tax Court and thus do not reach other issues presented by petitioner.

However, my two colleagues are of the opinion that the Tax Court committed error in this case for the reasons expressed by Judge Kern in his dissent. The following paragraph from Judge Kern's opinion gives the essence of his argument (26 T.C. at pages 462–463):

"The fundamental fallacy in the majority opinion lies in its disregard of the fact that the cancellation of petitioner's obligation to repay without interest $185,000 of the deposit in 1982 was accomplished simultaneously with the acceleration of the termination of the lease and by the same agreement of September 14, 1949. We are not aware of the motives or background leading to the agreement by which the lease was to be terminated in 1950. Prior to the execution of this agreement, petitioner (the lessor), in addition to having the right under the lease to receive the rents provided for therein, had the right to use without interest during the term of the lease the sum of $250,000 deposited with it as security. In bargaining for the cancellation of the lease it would be unlikely that the lessor would agree to any cancellation without first reaching an agreement with regard to its then future (and far distant future) obligation to repay this deposit to the lessee. In the instant case it is apparent that before the lease was cancelled and as a condition to the agreement of termination the parties had also reached an agreement on the equally important question of the amount of petitioner's future obligation to repay to the lessee the security deposit which should also be cancelled. The agreement of September 14, 1949 (executed prior to the effective date for the termination of the lease in 1950), expressly provided for the cancellation of petitioner's obligation to repay to the lessee $185,000 of the deposit and was executed at a time when this obligation was a future obligation.[5] The majority opinion on this crucial point would have validity if there had been no agreement between the parties relating to the cancellation of the obligation to

5. It is significant that the amount of the deposit which should be repaid to the lessee in 1950 ($65,000) does not dif-fer greatly from the present value in that year of an obligation to repay $250,000 in 1982.

repay the security deposit prior to or contemporaneously with the agreement of September 14, 1949, and later, after the termination of the lease, there had been a cancellation of the obligation. At that time and under those conditions the cancellation of the obligation would be the cancellation of a present obligation. However, those are not the facts of the instant case. Here, unlike the cases cited in the majority opinion, the landlord did not stand by and permit his future obligation to repay the deposit to be tacitly converted into a present obligation by the termination of the lease before its expiration without reference to the repayment of the deposit. In the negotiations leading up to the agreement of September 14, 1949, and in the agreement itself, the parties to the lease were concerned not only with the termination of the relation of landlord and tenant but also with the extent of the cancellation, if any, of the landlord's obligation to repay the deposit to the tenant. It should be emphasized again that prior to the agreement of September 14, 1949, petitioner had the valuable right to use without interest the deposit of $250,000 until 1982 (subject to being curtailed by conditions subsequent), and that petitioner would naturally be concerned with the settlement of his rights and/or obligations with regard to this deposit prior to or contemporaneously with a termination of the lease before its expiration, since the termination, as the majority opinion holds, standing alone would result in the *entire* amount of the deposit being immediately repayable to the lessee. Therefore, it was carefully provided in the same instrument which provided for the termination of the lease in 1950 that the tenant released and discharged the landlord from the obligation to repay or return to the tenant $185,000 of the deposit, *which, at the time the agreement was exe-*

*cuted, was an obligation to repay in 1982.* Therefore, at the time of the cancellation of petitioner's obligation this obligation was a future obligation to repay a sum of money without interest."

A judgment will be entered vacating the decision of the Tax Court, and remanding the case to that court for further consistent proceedings, including consideration of possible issues as to valuation.